Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CATHERINE CASTELLANOS, LAUREN COURTNEY, RACHAEL JASPER, BRIANNA MORALES, VICTORIA RACHET, LILY STAGNER,  NATALEE WELLS, CECELIA WHITTLE, and MARYANN ROSE BROOKS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>CITY OF RENO and MICHAEL CHAUMP, in his official capacity as Business Relations Manager of Community Development and Business Licenses for the CITY OF RENO and DOES 1 through 10, inclusive,<br><br>      Defendants. | **CASE NO.:**<br><br>Related Prior Case No.:  3:17-cv-00574-MMD-VPC<br><br>**COMPLAINT FOR INJUNCTIVE, DECLARATORY RELIEF AND RESTITUTION FOR VIOLATION OF CIVIL RIGHTS: FIRST, FOURTH, FIFTH and FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**<br><br>42 U.S.C. 1983<br><br>    FIRST AMENDMENT PETITION - PRIOR RESTRAINT, EQUAL PROTECTION/AGE AND GENDER DISCRIMINATION AND DUE PROCESS |

        COMES NOW Catherine Castellanos, Lauren Courtney, Rachael Jasper, Brianna Morales, Victoria Rachet, Lily Stagner, Natalee Wells, and Cecelia Whittle (herein also collectively referred to as "Adult Interactive Cabaret Performers" and/or "Plaintiff Dancers") on behalf of themselves and all other similarly situated female adult interactive cabaret performers

who are between the ages of 18 and 21 years of age, and who lawfully dance topless as strippers at adult interactive cabarets licensed by the City of Reno that serve alcohol to their customers; and Plaintiff Maryann Rose Brooks (herein "Plaintiff Brooks" or "Plaintiff Patron"), a person who is between 18 and 21 years of age and who wishes to enter an adult interactive cabaret licensed by the City of Reno to view the performances exhibited therein, on the same basis as she may enter any other licensed non-adult cabaret, performance venue, or restaurant within the City of Reno that serves alcohol to others and allege as follows:

## JURISDICTION AND VENUE

1.      Pursuant to 42 U.S.C. § 1983, this Court has original jurisdiction over the claims alleged herein for violation of Plaintiffs' civil rights to free speech, free association, due process and equal protection of law under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

2.      Venue is proper in the Northern Division of the District of Nevada as all Defendants are located within the City of Reno and/or the venue of this Court.

## PARTIES

3.      At all times relevant herein, Plaintiff Dancers Catherine Castellanos, Lauren Courtney, Rachael Jasper, Brianna Morales, Victoria Rachet, Lily Stagner, Natalee Wells, and Cecelia Whittle and each of them, are between 18 and 21 years of age and working as a female adult interactive cabaret performer (commonly known as a stripper or strip tease artist), registered as an independent  business owner with the State of Nevada Department of Taxation, licensed by the City of Reno as a business entity, and possessing an Adult Inactive Cabaret Performer Work Card issued by the Reno Police Department pursuant to Reno Municipal Code ("RMC") 4.07.007 and 5.05.012.

4.      At all relevant times Plaintiff Patron Maryann Rose Brooks has been between 18 and 21 years of age and wishes to enter an adult interactive cabaret licensed by the City of Reno to view the performances exhibited therein, on the same basis as she may enter any other licensed non-adult cabaret, performance venue, or restaurant within the City of Reno that serves alcohol to its customers.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

5.      Defendant CITY OF RENO is a political subdivision of the State of Nevada, with its main offices located at 1 East First Street, Reno, NV 895505.

6.      Defendant MICHAEL CHAUMP is the Business Relations Manager for the City of Reno, Nevada and is sued only in his official capacity as Defendant Reno's Chief Municipal Officer in charge of the enforcement and interpretation of RMC Chapter 4 and 5 as it pertains to Plaintiffs herein.

7.      Plaintiffs reserve the right to seek to amend this complaint to name other individual in his or her official capacity, should another person assume the position Defendant Chaump now occupies.

8.      The identity of DOES 1-50 is unknown at this time and the Complaint will be amended at such time when the identities are known to Plaintiffs. Plaintiffs are informed and believe that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant" or "Defendants" herein shall mean "Defendants and each of them."

## STANDING

9.      At all times relevant herein, Plaintiff Dancers have paid all required fees and have been required under force of law to obey all regulations contained in the "Privileged License," "Adult Interactive Cabaret" and "Adult Interactive Cabaret Performer" sub-sections of Chapter 4 and 5 of the Reno Municipal Code ("RMC").

10.     As a result of the passage of the amendments effective May 8, 2019 (hereinafter "May 8, 2019 amendments") to RMC Chapter 4 and 5, each Plaintiff Dancer lost and will continue to loose substantial income from not working as a stripper dancing topless at one or more of the only four adult interactive cabarets permitted in and licensed by the City of Reno.

11.     Each Plaintiff Dancer and Plaintiff Patron Brooks has and will continue to suffer irreparable harm to their constitutional rights if the Defendants, their officials, employees, agents and assigns are not enjoined from enforcing the unconstitutional provisions of RMC Chapter 4 and 5, as more fully described hereinafter.

12.    Each Plaintiff Dancer and Plaintiff Patron Brooks has or will have suffered injury in fact as a result of the newly enacted amendments concerning to the Reno Municipal Code Sections 4 and 5 and thus each has standing to assert the claims herein for the following reasons, *inter alia*:

a.    Plaintiff Dancers each have a property interest in their license and Reno Police Department Work Card as an adult interactive cabaret performer, and the income expected to be deprived therefrom has now been taken without just compensation by the Defendants enactment and continued enforcement of RMC 5.06.080(b)[1];

b.    Plaintiff Dancers each have a First Amendment and Equal Protection right to express themselves by performing topless within a properly licensed Adult Interactive Cabaret in the City of Reno serving alcohol on the same basis as: (1) other 18 to 21 year old females who are not prohibited by law from expressing themselves by dancing with their breasts covered at licensed non-adult cabarets and other performance venues that serve alcohol; (2) other female adult interactive cabaret performers who are aged 21 and over who are permitted legally to dance topless at licensed adult interactive cabarets that serve alcohol in Reno; and (3) males, both those 18 to 21 and those over 21, who are permitted, without payment of fees or imposition of any regulation or restriction at all to dance topless at theaters, nightclubs and restaurants in the exact same way as would any female Adult Interactive Cabaret Performer.

c.    Plaintiff Patron Brooks has a First Amendment and Equal Protection right to observe other females who wish to express themselves to the public, or in private, by performing topless within a properly licensed Adult Interactive Cabaret in the City of Reno serving alcohol on the same basis as do other 18 to 21 year olds who

---

[1] RMC 5.06.080(b) was added on May 8, 2019 to state: No person, whether patron, performer, or otherwise, under the age of eighteen years shall be admitted to, or permitted to remain on the premises of, an adult interactive cabaret. No person, including employees and performers, under the age of twenty-one years shall be admitted to, or allowed to remain on the premises of, an adult interactive cabaret wherein alcohol is provided, served, sold, or consumed.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

are not prohibited by law from being admitted to shows or performances at other theaters, nightclubs and restaurants that serve alcohol, including those theaters, nightclubs and restaurants which feature topless male dancers performing in the exact same way as would any Adult Interactive Cabaret Performer.

d.     All Plaintiffs have standing to assert due processes claims against the City of Reno for enacting rules and ordinances directly affecting them without adhering to the requirements of NRS 237.030 through 237.100, inclusive.

13.     At all times relevant herein, Defendants, and each of them, were acting for themselves and as agents within the scope of their authority or ostensible authority for all other Defendants herein.

## STATEMENT OF FACTS

14.     Although presented, organized and labeled by issue, the sub-titles, placement and order of each of the following statements of facts is not intended to limit their application to any or all causes of action subsequently plead hereinafter.   To avoid repetition, each section incorporates all prior statements of fact that may be applicable or relevant to any resulting cause of action as if those allegations were repeated therein.

### Violation of Equal Protection by Gender Discrimination *On Its Face*

15.     On its face, Reno Municipal Code Chapters 4 and 5 discriminate against woman in favor of men.

16.     "Adult Interactive Cabaret Performers" is a term of art used by the City of Reno to describe a female who dances topless, more commonly known as an "exotic dancer, stripper or similar dancer. . ."  *See* December 13, 2017 *Order* of Judge Miranda Du in *Discopolus LLC, dba the Wild Orchid et. al v. City of Reno,* Nevada Federal District Court Case No. 3:17-cv-00574-MMD-VPC on (Pls.' Motion for Temporary Injunction – ECF No. 11; Pls.' Motion for Preliminary Injunction – ECF No. 12;  Defs.' Motion to Dismiss – ECF No. 19).

17.     As stated in the May 8, 2019 Amendments to RMC Section 5.05.012(a):

Each adult interactive cabaret employee and adult interactive cabaret performer employed or conducting business as an independent contractor in an adult interactive cabaret, as defined

- 5 -

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

under RMC section 5.06.011, shall obtain an adult interactive cabaret work card as described under this section, and have his/her fingerprints and photograph taken through the chief of police prior to the commencement of work.

18.    RMC Section 5.06.011(a) states:

*Adult interactive cabaret performer* also referred to as "performer" means any person male or female who:

i. is an employee or independent contractor of an adult interactive cabaret and who, with or without any compensation or other form of consideration, performs as a sexually oriented dancer, exotic dancer, stripper or similar dancer, actor, model, entertainer or worker whose performance on a regular and substantial basis emphasizes exposure of and focus on the adult interactive cabaret performer's specified anatomical areas; or

ii. is a person who, while performing or conducting personal or individual grooming, maintenance or hospitality services such as barber, cosmetic, food or beverage service or personal property maintenance (such as car wash or laundry), nevertheless emphasizes exposure of and focus on the person's specified anatomical areas; or

iii. is a patron of an adult interactive cabaret where the patron is performing for other patrons as part of any publicized or promoted event that encourages adult interactive cabaret performance by such patrons such as an "amateur night" or a "tryout night".

The terms "adult interactive cabaret performer" and "performer" are synonymous as used in this chapter.

19.    On its face, Chapter 4 and 5 of the Reno Municipal Code does not permit fully nude dancing by either sex, but allows males to dance completely topless without restriction, while females cannot expose their breasts below a point immediately above the top of their areola, unless the females are subject to the provisions of RMC Chapter 4 and 5 relating to Adult Interactive Cabaret Performers.

20.    The only relevant difference between male topless dancers and female topless dancers is the gender of the performer and the words of RMC section 5.06.011(h) which distinguishes between male and female strippers who dance topless when the statute states:

Specified anatomical areas means: (1) Less than completely or opaquely covered: human genitals or pubic region; buttock; ___**or**___

- 6 -

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

_**female breast below a point immediately above the top of the areola**_; and (2) Human male genitals in a discernibly turgid state, even if completely or opaquely covered.

21.    Defendants require all female strippers (including the Plaintiff Dancers) to obtain licenses costing about $390 initially to dance topless exposing their breasts below a point immediate above the top of the areola, but do not require the same of male strippers who dance topless.

22.    Defendants require all female strippers (including the Plaintiff Dancers) to undergo a rigorous and intrusive background check, to abide to harsh restrictions on when and where they can perform and to obey (under threat of fines and/or criminal prosecution) other onerous, inhibiting, and chilling restrictions on their First Amendment expression as contained in RMC Chapter 4 and 5, before and as a condition of, performing as a stripper dancing topless with their breasts exposed below a point immediate above the top of the areola, but do not require the same of male strippers who can dance topless at almost any entertainment venue, including those that serve alcohol and some which are even owned by the City of Reno, without being subjected to any of the requirements or mandates to Adult Interactive Cabaret Performers contained in RMC Chapters 4 and 5.

23.    Plaintiffs adopt and incorporate by reference as if fully set forth herein, the findings of Judge Miranda Du at page 3 in above cited order when she states:

> The process for obtaining Work Cards is described in detail in an affidavit submitted by the City. (ECF No. 16-1.) The first step for strippers seeking a Work Card is to produce a City business license and valid government-issued identification to the Reno Police Department ("RPD"). (Id. at 2.) RPD hands the applicant a work card application, civil applicant waiver, and child support information, then searches for outstanding criminal warrants while the applicant completes the forms. (Id. at 3.) If the applicant is not arrested on the spot for outstanding warrants, then the applicant pays RPD $100.25 "to process the application[] and perform a statewide and nationwide criminal background check." (Id.) RPD then photographs the applicant, takes fingerprints, and issues a Work Card to the applicant. (Id. 3-4.) The Work Card remains valid for five years. (Id.)

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

24.    To become a fully licensed Adult Interactive Cabaret Performer the entertainer must obtain a business license by payment of a $200 deposit fee to the Nevada State Department of Taxation, an $85 fee to the City of Reno for a business license, and a $105.25 fee for the FBI background check and other administrative costs imposed by the Reno Police Department.  At present, the initial cost of obtaining all the three licenses required to become a fully licensed Adult Interactive Cabaret Performer  is in excess of $390.00.

25.    No female stripper can dance topless as an Adult Interactive Cabaret Performer before she has paid these costs, undergone a criminal background FBI check, signed an assignment of wages for child support (if applicable) and suffered the substantial  delay created by these tasks before she can dance topless in Reno, while men who dance topless do not have to pay these fees, are not required to undergo a background check or sign an assignment of wages for child support, nor suffer any delay before they can dance at any licensed cabaret (both adult interactive and non-adult) within the City of Reno.

26.    Under RMC 5.06.035, a female stripper who wishes to dance topless can be delayed up to 30 days before she can lawfully express herself by dancing topless, while a male stripper who wishes to dance topless is not subject to any prior restraint or delay because the male dancers are simply not treated as "adult interactive cabaret performers" by virtue solely of their gender.

27.    Delay and prior restraint to female strippers who wish to dance topless is significant.  Defendant does not process applications on Friday, Saturday or Sunday, which means that the female strippers who wish to dance topless must present themselves to the Reno Police Department with all their other paperwork completed before Thursday afternoon in order to perform on Saturday or Sunday after they make application.  Ironically, Defendant  City of Reno will issue a marriage license any day of the week, usually within a few hours of application.  Again, male strippers who wish to dance topless are not subject to this delay and prior restraint, simply because Defendants do not regulate male strippers who wish to dance topless as adult interactive cabaret performers under RMC  Chapter 4 and 5.

- 8 -

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

28.     Pursuant to RMC Chapter 5, woman who dance topless as strippers are confined to performing at any of four adult interactive cabarets currently licensed by the City of Reno (Wild Orchid, Fantasy, Spice House and/or Men's Club) whereas men who dance topless as strippers, can and have danced lawfully in many other venues within the city of Reno such as the Atlantis, Harrah's, Five Star, Faces NV, and Splash (formerly known as Tonix).

29.     The above licensing conditions are a significant burden on the class of female topless dancers that are not imposed upon male topless dancers.

30.     By the wording of RMC 5.06.11(h) men who dance topless as strippers do not have to endure the same burdens of these and other regulations within Chapter 4 and 5 of the Reno Municipal Code as do females who dance topless as strippers.

**Violation of Equal Protection by Sex Discrimination *as Applied***

31.     As applied, Reno Municipal Code Chapters 4 and 5 discriminate against woman in favor of men.

32.     Whether because of the exact wording of RMC section 5.06.011(h) or for some other reason, Defendants enforce the provisions of RMC Chapter 4 and 5 only against female strippers who dance topless but do not enforce the same regulations against male strippers who dance topless in the same manner as female strippers.

33.     Thus, female topless dancers, like Plaintiff Dancers herein, have a reasonable fear of arrest and prosecution if they do not obey the rules and instructions of the Defendants, while Defendants do not issue such rules and instructions applicable to males who dance topless as strippers.

34.     Woman who have danced topless as strippers have been fined by the City of Reno, while upon information and belief, not a single male has been fined, disciplined or punished by Defendants for dancing topless as a stripper in the same manner as females, although many men have done so, openly and notoriously with plenty of prior notice through advertising on large billboards outside downtown casinos like Chippendales at Harrah's and Thunder from Down Under at the Atlantis' electric video sign on Virginia Street.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

35.     And while male strippers who dance topless are permitted to advertised and promote their business of stripping topless with their chests totally exposed on large signs on the outside of Harrah's downtown, and on the electronic video sign in front of the Atlantis, the females who dance topless inside the Wild Orchid, Fantasy Girls and Spice House are not allowed to promote themselves in a similar  manner, even if they are fully clothed.  Females are not permitted by the Defendants to be presented as dancing on the video sign in front of the Wild Orchid (a sign much smaller than the one's depicting bare chested male dancers at Harrah's and the Atlantis) even if the female dancers' chest and bottoms are completely covered.

36.     Plaintiff Dancers would like to advertise themselves dancing (with their breasts fully covered) on the sign in front of the Wild Orchid but are forbidden to do so by the Defendants herein. No such restriction is applied by Defendants to male strippers who wish to advertise the fact that they dance topless throughout the City of Reno.

37.     Defendants have required that all adult interactive cabarets in Reno maintain a daily roster of those females who dance topless that day as strippers, and have continuously monitored the list to check if the females were properly licensed; Defendants regularly inspect such records within full view of the dancers, impressing upon them that Defendants will punish those females who dance topless as strippers without first obtaining all licenses and permits required by RMC Chapter 4 and 5.

38.     Upon information and belief, Defendants have never required such recordkeeping by the establishments that regularly feature male topless dancers like Five Star, Atlantis, Harrah's, and Splash.  Defendants have never inspected the records from these other establishments to confirm that the dancers who work topless are all properly licensed, even though Defendants periodically inspect the records of all adult interactive cabarets to make sure all the female strippers who perform topless are properly licensed.

39.     Defendants have regularly conducted undercover sting operations against females who dance topless as strippers, have conducted sting operation to induce them to unlawfully solicit an act of prostitution pursuant to an undisclosed written directive to the Reno Police

Department while, upon information and belief, not a single sting operation targeted against males who dance topless as strippers has been directed by and/or undertaken by Defendants.

40.     In addition to undercover police, Defendants acting through the office of the City Attorney, have hired and/or paid for non-public, private investigators to enter the adult interactive cabarets where female strippers dance topless to find evidence of wrongdoing, while upon information and belief, the City Attorney has never conducted such non-public private investigations of establishments that host male strippers who dance topless.  By these, and other enforcement actions, Defendants, and each of them, have selectively prosecuted females and enforced the rule and regulations in Chapter 4 and 5 against females rather  than against males.

**<u>Violation of Due Process in violation of NRS 237.080 et seq.</u>**

41.     At a public meeting held on April 24, 2019, the Reno City Council adopted an extensive set of amendments to Chapter 4 and 5 of the Reno Municipal Code, essentially re-writing regulations that had been in existence for over 20 years.

42.     Upon information and belief, the City Attorney has had a previously undisclosed, personal pecuniary interest in shutting down the Wild Orchid as an adult interactive cabaret in Reno.

43.     Like every other Adult Interactive Cabaret Performer, Plaintiff Dancers are and were required to maintain a state and city business license, and therefore each adult interactive cabaret performer, including Plaintiff Dancers herein, is a "business" for purposes of the requisite business impact statement.

44.     Prior to April 24, 2019, as required by NRS 237.080 et seq., the Reno City Council received business impact statements from the stakeholders that would be most affected by these proposed regulations.

45.     NRS 237.080(1) states:

> Before a governing body of a local government adopts a proposed rule, the governing body or its designee must make a concerted effort to determine whether the proposed rule will impose a direct and significant economic burden upon a business or directly restrict the formation, operation or expansion of a business. The governing body of a local government or its designee must notify trade

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

associations or owners and officers of businesses which are likely to be affected by the proposed rule that they may submit data or arguments to the governing body or its designee as to whether the proposed rule will:

(a) Impose a direct and significant economic burden upon a business; or

(b) Directly restrict the formation, operation or expansion of a business.

46.     A copy of the September 13, 2018 response on behalf of three of the four licensed Adult Interactive Cabarets within the City of Reno ( Wild Orchid, Fantasy Girls, and Spice House), as well as on behalf of the Ponderosa Hotel, and the hundreds of dancers, employees and tenants that would be adversely affected by the proposed regulations is attached hereto as Exhibit A, hereinafter September 14, 2018 Response.

47.     The September 13, 2018 submission to the Reno City Council by the owners of the Ponderosa Hotel, Wild Orchid, Fantasy Girls, and Spice House summarized attached reports by a recognized local real estate appraiser, William G. Kimmel, MAI, SREA and local certified public accounting firm of Pangborn & Co., Ltd. opining "that the proposed regulations will have a negative impact of over $25 million per year, not including the more than $300,000.00 in sales and room taxes that the City will be losing from the regulatory taking of these businesses." *See* Exhibit A and Exhibit B attached, hereinafter May 8, 2019 Objection.

48.     The cover letter to the September 13, 2018 submission to the Reno City Council accurately summarized the attached reports when it stated (footnotes omitted):

In particular, the dancers at these three clubs (Wild Orchid, Fantasy Girls, and the Spice House) collectively earn about $24,000,000 a year. Of that money, almost all of it comes from private dances and topless lap dances which will be forbidden by the new proposed regulations. In addition, between 20% and 30% of the dancer are aged 18 to 21, so they will be reduced to zero revenue, or 100% loss.

But even if the reduction of income is only 65%, a rather modest assumption, the "class" of female adult interactive cabaret performers working at these three clubs would lose approximately $16 million as a direct result of these new regulations. For the average dancer, this will mean a drop of annual income from approximately $54,000 to $23,000, which is basically poverty level for a single woman with one or two dependent children at home.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

And the four business entities at risk (Ponderosa, Wild Orchid, Fantasy Girls, and Spice House) have an annual payroll of just over a million dollars per year ($1,077,905), which will be substantially reduced to less than 50% of its present amount.

Thus, the impact of the proposed regulations on the people who work in these businesses will exceed $16.5 million a year not including the increased drain on Reno social services from these newly impoverished workers. In addition, the owners would directly lose about four million dollars a year ($4,000,000), out of the six million ($6,000,000) gross revenue the clubs now generate. Lawsuits would be filed, and the City would be involved in a lengthy, distracting and possibly financially ruinous battle for years to come.

49.     In addition, between 20% and 30% of the dancers are aged 18 to 21, so they will be reduced to zero revenue, or 100% loss.  The numbers for the Men's Club are proportional, adding an additional one quarter more in damages to the under 21-year-old dancers excluded by the new regulations.  In other words, the only evidence of business impact on the businesses owned by dancers who are between 18 to 21 years of age is the they will lose, in the aggregate, between $3,300,000 and $4,950,000 by not being allowed to work at the Wild Orchid, Fantasy Girls, and Spice House, plus another $1,386,000 to $2,079,000 of loss income from not being allowed to work at the Men's Club.

50.     The only record evidence of any economic impact to dancers who are 18 to 21 years of age shows an adverse business impact from enacting RMC 5.06.080(b) of between $4,686,000 and $7,029.000 per year just for the female topless dancers working at the Wild Orchid, Fantasy Girls, and Spice House.

51.     In its September 13, 2018 letter by owner Eugene Cleveland "Cleve" Camepa, Men's Club estimated it hosts about 150 dancers per year and would have a business loss to itself of approximately $7 million dollars per year.  As stated in the September 13, 2018 letter:

"In closing, our business, the individual businesses of our Adult Interactive Cabaret Performers and our Employees income are all at stake. This impact is in excess of $7,000,000 per year just for those affected at The Men's Club alone. This is a gross misuse of your authority to put so many people out of work."

- 13 -

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

52.     Assuming the industry standard ratio of revenue between the club and the dancers applied, the application of RMC 5.06.080(b) would add another 42% or so in negative impacts to the dancers aged 18 to 21 who perform at the Men's Club as well.

53.     The City of Reno staff presented its "Adult Business Impact Statement" at an open meeting held on or about April 24, 2019.  A copy of that report is attached hereto as Exhibit C.

54.     As can be seen from the text of Exhibit C, the report does not dispute any of the economic data contained in the submission.  But the report does not analyze the data, nor try to quantify the adverse impact to the *income* of the stakeholders like the clubs and dancers, but states instead:

> ECONOMIC IMPACT: The estimated economic effect of the proposed rules on the businesses, including, without limitation, both adverse and beneficial effects, and both direct and indirect effects:
>
> a) Adverse effects: The proposed amendments to RMC Titles 4, 5, and 8 appear to have unknown direct and indirect impacts, as they are difficult to quantify. Potential impacts include initial monetary costs to implement an enhanced video surveillance system on current businesses without such a system. However, additional adverse effects of varying degrees may be related to the proposed amendments to Title 18 if these amendments are adopted. *See* page 4-6.

55.     The Business Impact Statement ("BIS") prepared by staff completely ignores the evidence and dwells on the cost of electronic recording equipment.  Without any evidence in the record to the contrary, Exhibits A and B, which was filed with the City numerous times, showed that the proposed amendments would significantly limit the growth and continued viability to the businesses the City Council was trying to regulate, and cost the stakeholders millions in future wages and income.  Without a single factual submission to support its conclusion, the staff report states:

> The proposed ordinance changes specific to Titles 4, 5, and 8 for the operation and licensing of adult-oriented businesses may have a direct initial economic investment. Staff conducted extensive outreach via various methods of communication and determine that the proposed amended ordinances do not impose a direct or significant economic  expansion of a business. The proposed

- 14 -

ordinance changes consolidate existing ordinances and laws provide clarity to ensure the health, safety, and general welfare of the citizens of the City of Reno.[2]  *See* Exhibit B at p. 8.

56.     The above quoted statement by the City of Reno staff is untrue.  Not once did the staff from the City ask the owners of the strip clubs how much the proposed amendments would cost them in terms of lost income.  And, not once did anyone ask about the economic impact on the dancers who were 18 to 21 year of age.  Because there was no economic data in the record on the impact of proposed RMC 5.06.080(b) to 18 to 21 year old strippers who would lose about $4 to $7 million a year, Defendant's staff could not honestly conclude that the 18 to 21 year old female strippers would not suffer economic harm to their businesses if the amendments were enacted.

57.     At the same April 24, 2019 public meeting, the Reno City Council voted to proceed after receiving the "BIS" into the record rather than accepting it or considering it as required by law.  *See* Exhibit D – "April 24, 2019 – Minutes" at pp. 4-8.

58.     The Reno City Council acknowledged that there is not a proper BIS to consider before voting to adopt the proposed regulations.

59.     Notwithstanding, the Reno City Council voted in that April 24, 2019 public meeting to adopt the proposed amendments to Chapter 4 and 5 of the Reno Municipal Code, including but not limited to RMC 5.06 080(b) rather than to discuss and consider the BIS it had just received.

60.      The City Council also voted not to adopt, for now, the proposed changes to Title 18 (the title that would have forced the strip clubs to relocate).  In other words, the City Council voted to disaggregate the proposed amendments to Chapters 4, 5 and 8, without any business impact statement that considered the adverse economic impacts of each of the proposed regulations separately.  *See* Exhibit D at p. 15.

61.     This combination of accepting proposed amendments to Chapters 4 and 5 but rejecting proposed amendments to Title 18, had never before been presented to anyone at a public

---

[2] The April 24, 2019 meeting Agenda and Reports consist of 1,066 pages and can be accessed in entirety at: http://renocitynv.iqm2.com/Citizens/Calendar.aspx  Plaintiffs provide in Exhibits attached hereto, pertinent experts from the Minutes and Agenda.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

meeting for comment.  This was an entirely new economic situation for which there was never any business impact statement filed.

62.     In addition,  there was never a business impact statement or staff analysis of the economic harm resulting from adoption of RMC 5.06.080(b) on female dancers 18 to 21 years of age. Therefore, the city council simply adopted the regulations concerning those persons 18 to 21 years of age without ever considering the adverse impacts on this particular subgroup who were 100% economically harmed by this one proposed regulation, without regard to any other of the proposed changes to Chapter 4, 5 or 8.

63.     The Reno City Charter requires a second vote at a second public meeting before legislation can be adopted.

64.     The Reno City Council did not have the authority to vote to adopt the amendments on April 24, 2019 in the same public meeting that it "received but did not consider" the BIS.

65.     On or about May 8, 2019, the City Council again adopted the regulations it had previously voted to accept on April 24, 2019.  Although the amendments RMC Chapters 4 and 5 are officially dated May 8, 2019, they were actually adopted on April 24, 2019.  .

66.     Pursuant to NRS 287.100, the stakeholders timely filed an objection to the lack of a properly considered BIS.  A copy of the objection (misdated, but filed just after the May 8, 2019 meeting) is attached hereto as Exhibit B.  As stated in the second paragraph of that objection (footnotes omitted):

> NRS 237.090(1) states that a Business Impact Statement ("BIS") must be considered, not just prepared and received, by the legislative body as a prerequisite to passing any legislation.  The Reno City Council did not consider the BIS in this case, but "received it" without accepting any of its content. The whole purpose of requiring staff to prepare a BIS and forcing the governing body to offer less burdensome regulations based upon that BIS is defeated if the governing body can ignore the contents of the business impact statement by merely receiving it but not accepting its findings. Just as Council Member Reese said, the City has failed to base its legislation on a consideration of the content of the BIS, just as if none had been submitted

67.     The grounds for contesting a business impact statement is set forth in NRS 237.100(2) as follows:

> (a) The governing body of the local government or its designee failed to prepare a business impact statement as required pursuant to NRS 237.080 and 237.090; or

> (b) The business impact statement prepared by the governing body or its designee pursuant to NRS 237.080 and 237.090 is inaccurate, incomplete or did not adequately consider or significantly underestimated the economic effect of the rule on businesses.

68.     In addition to the City Council just receiving rather than considering the BIS in violation of NRS 237.100(2)(a), above referenced Objection specifically objected to the adequacy of the BIS. As the objection says:

> And the content of the BIS must be the economic effects on the operation of the businesses being impacted by the rule.  This is far more than the capital costs of equipment.  It is the loss of revenue to the businesses.  The report by Pangborn & Co. shows the value of these loses, although the BIS simply ignores this.  The report fails to address loss of revenue to the Clubs, Entertainers (who are each a business under Nevada law) and the government (lost tax revenue). Since any loss in revenue at Wild Orchid will directly reduce the subsidy for the Ponderosa, the BIS should consider the burden on social services created by an increase in rent to cover the shortfall created by these regulations, in addition to all other associated costs.

> Specifically, our records show that under 21-year-old dancers constitute about 25% of all dancers who dance at these clubs.  These three clubs will lose over $200,000 in lost "buy ins" from 18 to 21-year old's.  In addition, these dancers will lose 100% of their income. The economic impact on them is $6,151,160 per year (half of the 50% on Schedule VI of the Entertainer Loss).  Younger dancers earn more than the older dancers, and we estimate that these younger dancers will lose about $50,000 to $100,000 each.

69.     Finally, the Objection points out that the BIS fails to consider alternatives to the pretextual problem of underaged drinking at Adult Interactive Cabarets less drastic and harmful to the businesses of those strippers between the ages of 18 and 21 than completely banning them from even being on the premises as patrons, dishwashers, door girls, or entertainers.  Both NRS 237.090 and the intermediate scrutiny test applied to age based discrimination required that the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

City of Reno find the least intrusive, least negative, least costly to the affected population solution to the perceived problem that the legislation is ostensibly aimed at fixing. In the case of RMC 5.06.080(b) the City Council failed to fulfil this statutory and constitutional duty. As the Objection states:

> In addition, the BIS fails to consider less costly alternatives. If the concern is underaged drinking, then the least costly impact is to treat these dancers the same as underaged persons are treated in every other bar and restaurant and casino showroom in reno. If there is food being served, the establishment can hire and/or admit anyone it wants as long as it makes sure the staff doesn't serve alcohol to the underaged. This is done in both Men's Club and Spice House where food is served, and the bartenders know the underaged dancers. If no food is served, wrist bands are used in many other venues, although not required by law.
>
> In this case, we have offered, and have voluntarily implemented, a wrist band system at Fantasy Girls, Wild Orchid, and Spice House. This is the least costly way to control underaged drinking.

70.     To date, Counsel for the Objectors has yet to receive any reply from Defendants to its timely objection to the failure of the City Council to actually consider an appropriate BIS in a public meeting at least 10 days prior to the actual adopting of the ordinances, including the failure to explore a less restrictive means for accomplishing a legitimate legislative purpose than simply banning all 18 to 21 year old persons from the premises of any and all licensed adult interactive cabarets, while at the same time, allowing the same group of people to attend public performances by male strippers dancing topless.

## Violation Of Equal Protection By Age Discrimination And Violation of First Amendment Rights of 18 To 21 Year Old Adults.

71.     The Age of Majority in Nevada is 18. NRS 129.010 states:

> All persons of the age of 18 years who are under no legal disability, and all persons who have been declared emancipated pursuant to NRS 129.080 to 129.140, inclusive, are capable of entering into any contract, and are, to all intents and purposes, held and considered to be of lawful age.

72.     Pursuant to NRS 200.364, the Age of Consent in Nevada is 16.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

73.    Thus, there is no justification in the Nevada Revised Statutes for treating those persons 18 to 21 years of age, like Plaintiffs herein, differently than any other adult.

74.    But on May 8, 2019, RMC 5.06.080(b) was amended to state, in relevant part:

> No person, including employees and performers, under the age of 21 years shall be admitted to, or allowed to remain on the premises of, an adult interactive cabaret wherein alcohol is provided, served, sold, or consumed.

75.    On its face, RMC 5.06.080(b) distinguishes and treats differently adults over 21 from adults under 21 (but over 18).  Although the statute says its limited to banning persons 18 to 21 years of age only from adult interactive cabarets where alcohol is served, the fact is that all the adult interactive cabarets licensed by the City of Reno serve alcohol, which record testimony to the City Council was repeatedly offered and proved that serving alcohol is the main source of revenue for these establishment is every case. Just as the main source of revenue for a movie theater is the refreshment sales, so too the main source of revenue for the strip clubs in Reno is alcohol sales.  The City Council improperly imposed a Hobson choice on the First Amendment provider of topless female dancing of either giving up its main source of revenue or ban those under 21 from performing.  RMC 5.06.080(a) is to interactive cabaret performers between the ages of 18 and 21, as is a law that would require movie theatres that showed "Star Wars" could no longer sell popcorn, while theaters that showed only Warner Brother's films could sell popcorn, would be to Disney Studios.  The legislation may be directed to the exhibitor's venue (theater or strip club) but the intended target is the provider of First Amendment content.".

76.    As applied, RMC 5.06.080(b) completely excludes adults who are 18 to 21 years of age from entering any adult interactive cabaret to perform or to observe a performance by others because all four of the adult interactive cabarets serve alcohol to their patrons.

77.    But RMC 5.06.080(b) is underinclusive because persons between the ages of 18 to 21 may work and/or attend other establishments licensed by the City of Reno that serve alcohol so long as those establishment do not provide the entertainment that the City of Reno finds distasteful.  RMC 5.06.080(b) is censorship in violation of the First Amendment.

- 19 -

78.     For example, RMC 5.07.060 provides that "any person desiring a special event alcohol permit" i.e. a concert or the rodeo, may also employ and/or admit to the event people under the age of 21, because if and only if that event were to allow female strippers to dance topless, then the event would need to have an adult interactive cabaret license which under RMC 5.06.080(b) means that no 18 to 21 year old could attend.

79.     Likewise, RMC 5.07.030 allows restaurants to serve alcohol while admitting people under the age of 21 to their premises. "Nothing in this subsection shall apply to establishments where alcoholic beverages are served only in conjunction with regular meals and where dining tables or booths are provided separately from the bar or any store where alcoholic beverages are not sold by the drink for consumption on the premises."

80.     Two of the four licensed adult interactive cabarets (Spice House and Men's Club) are full-service restaurants and subject to all the same health and other regulations applicable to restaurants in general.  But because Spice House and Men's Club also allow female strippers to dance topless, they must not allow any 18 to 21 year olds to enter their building.

81.     The under inclusiveness of RMC 5.06.080(b) is so flagrant that it just proves that the motive and purpose of RMC 5.06.080(b) is to censor the viewing of topless female dancers by 18 to 21 year old adults, rather than any concern over alcohol consumption or bad behavior by this group of people. Specifically, RMC 5.07.180 allows the holder or an alcohol cabaret license to both serve alcohol and admit persons under the age of 21 into the establishment to perform and/or view the performances of others.

82.     RMC 5.13.100 allows those under 21 to enter and/or work at a special event or special activity that serves alcohol even if the alcohol is being supplied by a third-party contractor.  Yet, RMC 5.06.080(b) prohibits the exact same behavior based solely on the content of the performance.  Ironically, the City of Reno regularly hires subcontractors that employ 18 to 21 year old workers to work during concerts, the rodeo, and conventions, where the very same contractor also is in charge of the beer and wine concession on site during the event.

83.     RMC 5.06.080(b)'s exclusion of all persons under the age of 21, including all Plaintiffs herein, from exercising the First Amendment right to perform, and/or to observe a

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

performance by others is based solely upon the content of the performances allowed at adult interactive cabarets, i.e. the topless dancing by female strippers (but not male strippers).

84.    There is no factual justification for this legislative distinction based upon age. For more than 20 years prior to the adopting of RMC 5.06.080(b), there has not been a single citation for underaged drinking at an adult interactive cabaret in Reno even those these clubs have allowed females over 18 but under 21 years old to dance topless for most of that time.

85.    Adult Interactive Cabarets in Reno have the lowest record of underaged citations for any business in Reno that serve alcohol. Other business establishments like liquor stores, restaurants, and convenience stores all have, on average, many more citations for underaged drinking than the four adult interactive cabarets in Reno.

86.    The argument that those under the age of 21 may be more likely to do bad things when exposed to alcohol and the uncovered breast of a female body simultaneously is not supported by the record, but is also illogical since those under 21 cannot drink alcohol so their inhibitions will not be lower than those over 21 who do drink.

87.    The City of Reno refuses to allow less restrictive methods of preventing potential underaged drinking at adult interactive cabarets despite finding those methods perfectly adequate in establishments that do not show females dancing topless.  Jub – Jubs, Faces (formerly the Underground) and Splash (formerly Tonix, which hosts male strippers who dance topless) admit 18 to 21 year olds, and serve alcohol. To prevent or curtail underaged drinking, these establishments have instituted a system of  wrist bands, stamps, driver license checking at the bar, or other assurances to prevent underaged drinking.  Although the Defendants have accepted such alternative means to discourage underaged drinking by other cabarets and performance venues, Defendants require a total ban on 18 to 21 year old persons from all adult interactive cabarets in Reno.

88.    The City of Reno can't justify this age discriminating statute by claiming it is fixing a problem because the facts show that the problem does not exist and has not existed in more than 20 years of experience with under 21 year olds being admitted to adult interactive

cabarets to perform. There is simply no logical reason to assume that continuing to allow 18 to 21 year olds to enter the clubs would cause a problem.

89.     By operation of the May 8, 2019 addition of RMC 5.06.080(b), Plaintiffs, and each of them, are prevented solely on account of their age, from enjoying their First Amendment Rights to free expression and association without any justification and/or without substantial justification and without Defendants allowing a less restrictive means of accomplishing any legitimate governmental interest of preventing alcoholic consumption by those under age 21.

### Taking of Property without Just Compensation

90.     Every licensed Adult Interactive Cabaret Performer, including dancers under the age of 21, has a vested property right in the stream of income to be derived from their ability to perform as a licensed Adult Interactive Cabaret Performer within the City of Reno.

91.     The value of that property right is the present value of the future income to be expected from female strippers aged 18 to 21 dancing topless at any of the four adult interactive cabarets licensed by the City of Reno.

92.     The is no provision in or relating to RMC 5.06.080(b) to allow those licensed adult interactive performers who are under 21 years of age to continue earning revenue performing lawfully as an Adult Interactive Cabaret Performer until they are 21 (at which time RMC 5.06.080(b) would not apply to them). In other words, there is no grandfather (or more accurately grandmother) clause in this legislation to protect those 18 to 21 year old performers already licensed and working.

93.     The City of Reno's enactment of RMC 5.06.080(b) took away legislatively the income and expected income from all those persons under the age of 21 who were working and earning money as a lawfully licensed Adult Interactive Cabaret Performer until they reached the age of 21.

94.     Based upon the reports submitted to the City of Reno, the economic loss caused by enactment of RMC 5.06.080(b) is between $4,686,000.00 and $7,029,000.00 for the first, year, and a steadily decreasing amount each year thereafter for three years. *See* Exhibits A and B.

- 22 -

95. The City of Reno has not offered any just compensation for taking this property right by its legislative action.

## CLASS ACTION ALLEGATIONS

96. Plaintiffs reallege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

97. Pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following classes:

A. "***All Under 21 Dancers Class***" consisting of all Adult Interactive Cabaret Performers who are between the ages of 18 and 21 years of age and who have a work card and/or license as required under any provision of the RMC to work as an Adult Interactive Cabaret Performer, hereinafter the "Under 21 Dancers Class";

B. "***All Female Dancers Class***" consisting of all female Adult Interactive Cabaret Performers who were required to pay a fee to the City of Reno as a condition of dancing topless at a time that male strippers who danced topless were not required to pay such fees, hereinafter "Female Dancers Class";

C. ***"All 18 to 21 Year Old Patrons Class"*** consisting of all patrons between the ages of 18 to 21 who are prevented from exercising their First Amendment Right to freedom of association, hereinafter "18 to 21 Patron Class".

98. All named Plaintiff Dancers are female and are under the age of 21 and thus can represent both classes alleged herein.

99. Plaintiff Dancers bring this action on behalf of themselves and all other similarly situated females who hold a license and/or work card issued by the City of Reno and who work as an Adult Interactive Cabaret Performer.

100. Plaintiff Dancers also bring this action on behalf of themselves and all other similarly situated females aged 18 to 21 years who hold a license and/or work card issued by the City of Reno and who work as an Adult Interactive Cabaret Performer.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

101.   Plaintiff Dancers bring a claim for damages and restitution for the unlawful collection of licensing fees by the City of Reno that fees were not required of male strippers who dance topless.

102.   Plaintiff Dancers bring an additional claim for just compensation on behalf of themselves and all other females between the ages of 18 to 21 who hold a license and/or work card issued by the City of Reno and who worked as an Adult Interactive Cabaret Performer and can no longer work as Adult Interactive Cabaret Performers since the passage of RMC 5.06.080(b), effective May 8, 2019.

103.   Class treatment is appropriate under Federal Rule of Civil Procedure ("FRCP") 23(b)(2) because this action seeks a court order of declaratory relief that the May 8, 2019 amendments to RMC Chapter 4 and 5, including but not limited to RMC 5.06.080(b) are unconstitutional, and an order enjoining Defendants from interfering with an Adult Interactive Cabaret Performer's First Amendment right to engage in creative expression by dancing topless at a properly licensed Adult Interactive Cabaret in the City of Reno without prior consent, without undo regulatory burden, and without the payment of fees on the same basis as males who dance topless are allowed to perform.

104.   Class treatment is also appropriate under FRCP 23(b)(2) because this action seeks a court order of declaratory relief that the May 8, 2019 amendments to RMC Chapter 4 and 5, including but not limited to RMC 5.06.080(b) are unconstitutional and an order enjoining Defendants from discriminating without substantial justification against Adult Interactive Cabaret Performers who are under 21 years of age by denying them the First Amendment right to perform or to be seen performing by others who between the ages of 18 to 21.

105.   Class treatment pursuant to FRCP 23(b)(3) is sought only as to monetary relief: (1) to the Under 21 Dancer Class resulting from Defendants taking of property without just compensation, and (2) to all Female Dancer Class for the restitution of unconstitutionally discriminatory license fees mandated by the City of Reno.

106.   Class treatment is appropriate under Rule 23's class certification mechanism because:

- 24 -

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

a.    <u>The Classes are Sufficiently Numerous</u>: Upon information and belief, there are over one thousand female Adult Interactive Cabaret Performers licensed by the City of Reno, and more than one hundred of whom are between the ages of 18 and 21 years old as of the filing of this Complaint.  Upon information and belief, there are over one hundred patrons whom are between the ages of 19 and 21 years old as of the filing of this Complaint.

b.    <u>Plaintiffs' Claims are Typical of Class Members</u>:

i.    Each Dancer Plaintiff was subjected to the same practices, plans, or policies as all other female licensed Adult Interactive Cabaret Performers including but not limited to collecting about $390.00 in fees plus renewal fees which are not required of male dancers who are not licensed or regulated by the City of Reno.

ii.    Each Dancer Plaintiff is female, is between the ages of 18 and 21, paid a fee to the City of Reno for  a five year work card as an Adult Interactive Cabaret Performer and are now subject to the provisions of the May 8, 2019 amendments to RMC 5.06.05 through 5.06.110, inclusive, which includes RMC 5.06.080(b) and therefore, are no longer permitted to legally perform as an Adult Interactive Cabaret Performer at the only places that they are allowed to perform within the City of Reno.

iii.    Each of the Plaintiff Dancers and Plaintiff Brooks are subject to the regulations, which say the reasons for their denial of work opportunity or patronage is because the strip clubs serve liquor.  The City of Reno's regulations about serving alcohol in any other restaurant, bar or nightclub (including those that feature males topless dancers) is proof that the RMC 5.06.080(b) is not narrowly tailored to meet an important governmental interest, and thus constitutes a taking without just compensation.

c.    <u>Common Questions of Law and Fact Exist</u>:  Common questions of law and fact exist and predominate as to Plaintiff Dancers and the Class Members, including,

without limitation: (1) whether or not the differentiation between male and female strippers both in practice and in the actual text of the regulations are constitutional, (2) whether or not the May 8, 2019 amendments, and each of them, are constitutional and (2) if not, what form of just compensation, restitution and/or  injunctive relief would be appropriate under 42 U.S.C. § 1983.

        d.    <u>Adequate Representation</u>:  Plaintiff Dancers are each members of both Dancer Classes whom they seeks to represent and each Plaintiff Dancer will fairly and adequately represent the interests of the members of each Class.  Each of the Plaintiff Dancers shares issues of law and fact in common with all members of both Dancer classes, and the interests of each of Plaintiff Dancers is not antagonistic to the other members of either Class.  Plaintiff Patron is a member of the 18 to 21 Year Old Patron Class whom she seeks to represent and Plaintiff will fairly and adequately represent the interests of the members of the Patron Class.  Plaintiffs and their counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Class Members.

        e.    <u>Common Issues Predominate/Superior Mechanism of Class Action</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Each Class Member has been damaged and is entitled to recovery by reason of Defendants' illegal policy of treatment females differently than males in the exercise of their First Amendment Right to dance topless, the denial of their right to dance topless at places to serve alcohol based solely on age when other establishments are allowed a less restrictive method of preventing underaged drinking, plus their claim for just compensation for time lost not using their Adult Interactive Cabaret license to earn a living and a disgorgement and/or restitution of all fees paid by female strippers who dance topless that are not required to be paid by male strippers who also dance topless; and/or those who are 18 to 21 who wish to view female dancers perform.  The prosecution of individual remedies by each Class Member will tend to establish inconsistent standards

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

of conduct for Defendants and result in the impairment of Class Members' rights and the disposition of their interest through actions to which they were not parties.

107.    Class treatment is also appropriate for the 18 to 21 year old Patron Class under FRCP 23(b)(2) because this action seeks a court order of declaratory relief that the May 8, 2019 amendments to RMC Chapter 4 and 5, including but not limited to RMC 5.06.080(b) are unconstitutional and an order enjoining Defendants from discriminating without substantial justification against patrons who are under 21 years of age by denying them the First Amendment right to observe female licensed Adult Interactive Cabernet performers dance topless at businesses that serve alcohol to others on the same basis that they may observe male strippers dance topless anywhere that serves alcohol to others and/or observe non-topless dancing at any non-adult cabaret or restaurant licenses by the city of Reno.

108.    Now, therefore, Plaintiffs seek certification under FRCP 23(b) (2) of all claims form declaratory and injunctive relief, and under FRCP 23(b)(3) claims for monetary relief i.e. just compensation for the under 21 year old dancers and disgorgement and/or restitution for all licensing fees paid by females not required of male strippers who dance topless.

### FIRST CAUSE OF ACTION:
### EQUAL PROTECTION – GENDER DISCRIMINATION
### On Behalf of All Female Dancers

109.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

110.    The Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

111.    As shown above, all the provisions of RMC Chapter 5 apply only to females who expose their ***breast below a point immediately above the top of the areola***. RMC Chapter 5.06 does not apply to males who perform essentially the same dances with their entire breast exposed.

112.    On its face, the entire text of RMC Chapter 5.06 establishes a gender-based distinction between male and female adult interactive cabaret performers, which is a suspect classification under the Fourteenth Amendment to the United States Constitution.

- 27 -

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

113.    The only difference in the performance of a male stripper or bare chested drag queen performer, who are not required to be licensed and are not regulated by Defendants and a female Adult Interactive Cabaret Performer is that females must be licensed, pay a large fee, be registered and vetted by the Reno Police Department, is restricted to where she can perform, is told she cannot adverse her performances by dancing publicly (even if fully clothed) on outdoor signs, and is the subject of constant selective investigation by the City of Reno Police Department following an undisclosed "directive."   A female striper who wishes to exercise her First Amendment Right to freedom of expression by dancing topless must endure all these hardships and more if she exposes her breast below a point immediately above the top of the areola, whereas a male stripper can expose his entire chest without being subject to any regulations, fees or registration requirements or other hardships imposed by the City of Reno.

114.    Defendants do not require male performers who expose their breast below a point immediately above the top of the areola to become licensed as Adult Interactive Cabaret Performers, and upon information and belief, there are no male Adult Interactive Cabaret Performers licensed by the City of Reno (although some may hold a general business license applicable equally to both men and woman and which is not at issue in this case).

115.    In addition, females strippers who wish to exercise their First Amendment Right of freedom of expression by dancing topless can only do so legally at one of four licensed adult interactive cabaret within the City of Reno, whereas males strippers who dance topless can do so legally at any of the many, many places of businesses that hold a general, non-adult cabaret license, a special events license, a restaurant license, and/or any other venue that is permitted to host entertainment of any sort.

116.    The conduct being regulated by this legislative distinction between men and woman, a suspect classification under the Fourteen Amendment is the right to dance, which is clearly protected expression under the First Amendment to the United States Constitution.

117.    Statutory classifications based upon suspect classifications like gender used to inhibit the exercise of a fundamental right like freedom of expression or freedom of association are subject to either strict scrutiny (which means the government must show that (1) the

legislation is necessary to achieve a compelling government interest, and (2) is narrowly tailored) or intermediate scrutiny (which means that the government must show that it is (1) is designed to serve a substantial government interest; (2) is narrowly tailored to serve that interest; and (3) leaves open alternative avenues of communication.)

118.    The distinction drawn between male and female strippers made by RMC 4.07.007 and RMC 5.06.011 does not comply with the strict scrutiny test applicable to all First Amendment Rights such as dancing topless.

119.    Even if the lower level of intermediate scrutiny was applied, the distinction between male and female topless stripers made by RMC 4.07.007 and RMC 5.06.011 does not justify the radical difference in obligations, costs, and extraordinary burdens imposed on female strippers who dance topless as opposed to no such obligations, costs and/or extraordinary burdens being imposed on male strippers.

120.    One of the more obvious content based, First Amendment discriminations imposed on female strippers who dance topless is the fact that there are many places within the City of Reno that male strippers can dance topless, while there are only four places where female strippers may do so legally. In addition, the Defendants' employees and agents have mandated that adult interactive cabarets may not put signage on their property showing female strippers dancing, despite the fact that the dancers are fully clothed. However, properties featuring male reviews and bare chested drag queen performances may heavily advertise the content of their all male performances with electric signs and video billboards showing these males strippers dancing topless.

121.    These are just some of the First Amendment rights being denied to female strippers who dance topless, but not to males, and the regulations are not narrowly tailored to achieve any compelling government interest in maintaining a legal distinction between male and female strippers who dance topless.

122.    So-called "secondary effects" is not a compelling government interest for the government regulation of free speech.

- 29 -

123.    "Secondary Effects" is nothing more than an excuse for prejudice—like saying certain ethnic groups would ruin a neighborhood, increase crime and drive down property values, and therefore those who buy and sell housing should be allowed to discriminate on the basis of race, creed or color.

124.    Therefore, the provisions of RMC Chapter 5 fail the strict scrutiny test required of all legislation that limits First Amendment expression.

125.    In addition, the statutory consequences flowing from the distinction between female strippers who dance topless and their male counterparts fails the intermediate scrutiny standards applicable to the denial of equal protection based upon a suspect classification such as gender.

126.    Defendants cannot show that the profound difference in treatment between highly regulated female strippers who dance topless and the complete lack of regulation of their male counterparts is: (1) designed to serve a substantial government interest; (2) narrowly tailored to serve that interest; and (3) leaves open alternative avenues of communication.

127.    There is no other avenue open to a female stripper who wants to dance topless than to pay almost $400 to obtain licenses, to perform at a venue other than the four adult interactive cabarets licensed by the City of Reno (as opposed to male strippers who can perform at an of the hundreds of  hotel show rooms, concert venues, restaurants, or non-adult cabarets such as bars and taverns throughout Reno), to having a protracted delay due to inaccessibility of the licensing authorities before a female stripper can perform.

128.    The gender based distinctions applied to all the provisions of RMC 5.06.05 through RMC 5.05.110 as amended on May 8, 2019 are not narrowly tailored to meet a specific legitimate governmental interest.

129.    If topless dancing causes secondary effects, which it does not, it causes those effects regardless of whether it is a man or a woman who is dancing topless. The statistical evidence does not support any finding of lesser "secondary effects" emanating from male reviews and drag queen shows which are not required to be licensed than so-called secondary effects coming from places that feature female Adult Interactive Cabaret Performers.

- 30 -

130.    Thus, while the government may have a compelling and/or substantial interest in reducing crime and sexually transmitted diseases, even if there is no record of such at Adult Interactive Cabarets in Reno, it does not have a have a compelling and/or substantial interest in treating men differently than woman.  By regulating only woman who expose their breasts during a performance, the City of Reno has not met either the strict scrutiny or intermediate scrutiny tests.

131.    WHEREFORE, plaintiffs pray judgment against Defendants and each of them, on its First Cause of Action, as follows:

a.      That this Court issue a temporary restraining order upon notice and/or preliminary injunction before trial enjoining Defendants, their officials, employees, agents, and assigns from enforcing, directly or indirectly through the Adult Interactive Cabarets under RMC 5.06.050 and 5.06.110, or their  agents and employees, the provisions of the Reno Municipal Code Section 5.06.005 through 5.06.120 in their present form against any female Adult Interactive Cabaret Performer, unless and until the legislation is made applicable to male strippers who dance topless as well;

b.      That this Court issue an order declaring unconstitutional the May 8, 2019 amendments to RMC 5.06.005 through 5.06.110, unconstitutional;

c.      That this Court issue an order awarding the Dancer Classes of Adult Interactive Cabaret Performers compensatory relief, restitution and disgorgement for all fees that they have paid to the City of Reno that male strippers were not required to pay;

d.      That this Court issue an order awarding Plaintiffs reasonable attorney's fees and costs as allowed by statute;

e.      That this Court issue an order awarding such further relief as the court may deem just.

/ / /

/ / /

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**SECOND CAUSE OF ACTION:**
**EQUAL PROTECTION – AGE DISCRIMINATION**
**On behalf of all Class Members Under 21 Years of Age**

132.    Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

133.    Pursuant to NRS 129.010, Plaintiffs, and all members of Plaintiffs' Classes have reached the age of majority, are not legal minors, and are entitled to the full protections of the First Amendment and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

134.    RMC 5.06.080(b) was added on May 8, 2019 to state:

> No person, whether patron, performer, or otherwise, under the age of eighteen years shall be admitted to, or permitted to remain on the premises of, an adult interactive cabaret. No person, including employees and performers, under the age of twenty-one years shall be admitted to, or allowed to remain on the premises of, an adult interactive cabaret wherein alcohol is provided, served, sold, or consumed.

135.    The license to sell alcohol is separate and apart from the license to be an Adult Interactive Cabaret.

136.    All four of the existing, operating Adult Interactive Cabarets derive the majority of their revenue from the sale of liquor.  Two of those clubs, Men's Club and Spice House, also serve food, with a full kitchen serving lunch and dinner daily.  All four of these licensed establishments  have allowed performers under the age of 21 to preform for more than ten years, without a single citation for underaged drinking and no other citations involving performers under 21.

137.    An Adult Interactive Cabaret Performers may only legally preform at an Adult Interactive Cabaret.  All the Adult Interactive Cabarets in Reno are privately owned and are open only to adults.

138.    All business that sell liquor within the City of Reno are allowed to employ 18 to 21-year old workers except those businesses that feature female topless dancers.

139.    All businesses that sell alcohol within the City of Reno are free to use a variety of methods at their own discretion to ensure compliance with the prohibition of serving alcohol to those under 21 except those businesses that  feature topless female dancers must completely deny access to anyone under the age of 21.

140.    RMC 5.06.080(b) is a *de facto* complete ban on topless dancing for females 18 to 21 years of age.

141.    A complete ban on dancing at is not the least intrusive method of ensuring that alcohol is not served to those under 21.

142.    Less restrictive systems to ensure that those under 21 do not purchase alcohol are used by other businesses in Reno with the approval of the Defendants.  These systems include wrist bands for those over 21, indelible ink stamps, simply requiring identification at the bar for anyone who purchases alcohol, or simply remembering which employees are under 21 so that they may not handle or consume alcohol on site.

143.    Defendant City of Reno itself serves alcohol in its convention center while admitting those under 21 to the venue and employing workers under 21 there as well.

144.    All Reno businesses that serve food as well as liquor may admit patrons and employ workers under the age of 21, except those that feature topless females dancing.

145.    The clear purpose of the amendment adding RMC 5.06.080(b) is to create a *de facto,* complete and entire ban on the ability of these Plaintiffs, and all those within the Plaintiff Dancer Classes from exercising their First Amendment Rights by prohibiting 18 to 21 year old dancers from performing as an Adult Interactive Cabaret Performer anywhere within the City of Reno.

146.    In the name of government paternalism of those over the age of majority, by enacting RMC 5.06.080(b), the City of Reno is denying females who are 18 to 21 years old the right of free expression even though they have licenses by the City of Reno to dance, and even though Plaintiffs have never been in trouble with the law for their topless dancing before these regulations took effect.

- 33 -

147.    A total ban on females under 21 from dancing far exceeds the minimum means necessary to accomplish any legitimate governmental interest in regulating underage drinking of alcohol, especially when the City of Reno allows every other nightclub or show room to admit and employ people under 21 years of age.

148.    RMC 5.06.080 is a prior restraint of the First Amendment protected activities of all persons 18 to 21 years of age who wish to see the entertainment offered at an adult interactive cabaret.  It is not narrowly tailored to meet any compelling governmental interest.

149.    The only governmental interest involved in prohibiting adults from seeing female stripper dance topless in a venue that serves alcohol is censorship.

150.    The fact that the law does not prohibit an 18 to 21 year old from attending  a male review at Splash, or Five Star, or see "Thunder from Down Under" at the Atlantis or Chippendales at Harrah's proves that there is not a compelling governmental interest, so-called under inclusion.

151.    WHEREFORE, plaintiffs pray judgment against defendants and each of them, on its Second Cause of Action, as follows:

a.    That this Court issue a preliminary injunction before trial restraining the City of Reno, its officials, employees and agents, from enforcing, or indirectly through the Adult Interactive Cabarets or its agent and employees under RMC 5.06.050 and 5.06.110, the May 8, 2019 Amendments to Reno Municipal Code 5.06.080(b);

b.    That this Court issue a permanent injunction after trial restraining the City of Reno, its officials, employees and agents, from enforcing, or indirectly through the Adult Interactive Cabarets or its agent and employees under RMC 5.06.050 and 5.06.110, the May 8, 2019 Amendments to Reno Municipal Code Section 55.06.080(b);

c.    That this Court issue an order declaring unconstitutional the May 8, 2019 amendment adding RMC Section 55.06.080(b), unconstitutional;

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

d.     That this Court issue an order awarding the Dancer Classes of all female Adult Interactive Cabaret Performers compensatory relief for the loss of income they have suffered as a result of the imposition of these May 8, 2019 amendments to RMC 5.06.080(b);

e.     That this Court issue an order awarding Plaintiffs reasonable attorney's fees and costs as allowed by statute;

f.     That this Court issue an order awarding such further relief as the court may deem just.

### THIRD CAUSE OF ACTION:
### REGULATORY TAKING WITHOUT JUST COMPENSATION
### On behalf of all Dancers Under 21 Years of Age

152.     Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

153.     Plaintiffs, and all members of the Dancer Classes, were issued licenses by the City of Reno to be an Adult Interactive Cabaret Performer.  This license entitled Plaintiffs and the Dancer Classes to perform at all the Adult Interactive Cabarets within the City of Reno.

154.     Plaintiffs and all members of the Dancer Classes paid money for that license.  The only purpose of that license was to enable Plaintiffs and all Dancer Class members to earn money and have a property right in that license. An Adult Interactive Cabaret Performer's license has no value if the licensee cannot perform in any of the existing licensed Adult Interactive Cabarets in the City of Reno.

155.     Upon information and belief, Adult Interactive Cabaret Performers under the age of 21 earns approximately $50,000 to $100,000 a year, for each year they are under 21 years of age. In the aggregate, the class of Adult Interactive Cabaret Performers who are licensed today, will lose approximately $6 million in the first year of this legislation, $4.5 Million the second year of this legislation, $3 Million in the third year of this legislation and $1.5 Million in the last year for a total loss to the class of $15 million.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

156.    By the enactment of the May 8, 2019 amendments to RMC 5.06.005 through 5.06.110, and in particular, RMC Section 55.06.080(b), which denies the right of 18 to 21 year olds to preform within the City of Reno, Defendants have deprived Plaintiffs and all members of the Dancer Classes of all economically viable use of their Adult Interactive Cabaret Performer license. All economic value has been taken by the aforesaid regulatory imposition.

157.    If these regulations were enacted to further some legitimate governmental interest, then by the enactment of the May 8, 2019 amendments to RMC 5.06.005 through 5.06.110, and in particular, RMC Section 55.06.080(b), which denies the right of 18 to 21 year olds to preform within the City of Reno, Defendants have taken private property of Plaintiffs and members of the Dancer Classes without just compensation in violation of the Fifth and Fourteenth Amendment to the United States Constitution.

158.    If these regulations were not enacted to further some legitimate governmental interest, then the May 8, 2019 amendments to RMC 5.06.005 through 5.06.110, and in particular, RMC Section 55.06.080(b), which denies the right of 18 to 21 year olds to preform within the City of Reno, constitute a prior restraint of free expression under the First Amendment and a denial of Equal Protection under the Fourteenth Amendment to the United States Constitution.

159.    In addition, Article 1, Section 8(6) of the Nevada Constitution states "[p]rivate property shall not be taken for public use without just compensation having been first made, or secured."

160.    By the conduct described above, Defendant has taken without just compensation the property of Plaintiffs' and all members of the Dancer Classes in violation of the Fifth and Fourteenth Amendment to the United States Constitution as well as Article 1, Section 8(6) of the Nevada Constitution.

161.    WHEREFORE, Plaintiffs pray judgment against Defendants and each of them, on its Third Cause of Action, as follows:

a.    That this Court issue an award of compensatory damages in the amount of $15 million according to proof;

b.      That this Court issue an order awarding Plaintiffs reasonable attorney's fees and costs as allowed by statute;

c.      That this Court issue an order awarding such further relief as the court may deem just.

**FOURTH CAUSE OF ACTION:**
**DENIAL OF DUE PROCESS- NRS 237.080 AND 237.090**
**On Behalf of All Plaintiffs**

162.    Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

163.    As stated in Section 2 of the May 8, 2019 amendments to RMC Sections 5.06.05 through 5.06,110, inclusive:

> The Reno City Council hereby finds that this ordinance is subject
> to the requirements of NRS Chapter 237, Business Impact
> Statement process.

164.    Pursuant to NRS 237.080 and 237.090, the City of Reno was required to prepare a business impact statement.

165.    Data for Defendants' BIS was submitted by the Ponderosa Hotel, Wild Orchid, Fantasy Girls, as well as 77 female Adult Interactive Cabaret Performers.

166.    On or about March 28, 2019, the City of Reno submitted to the City Council a BIS entitled: "Adult Business Regulations; Interactive Cabaret Performers, Adult Interactive Cabaret", a copy of which is attached hereto as Exhibit C.

167.    On or about April 24, the City of Reno had a "first reading" of final proposed amendments to the Adult Business Regulations; Interactive Cabaret Performers, Adult Interactive Cabaret sections of RMC Chapters 4, 5, 8 and Title 18.  At that time, City Council Member Devon Reese noted that the City had failed to make any findings or provide details as required by NRS 237.080 and 237.090 in its so-called BIS.  *See* Exhibit D, Minutes at p. 5.

168.    In the April 24, 2019 Reno City Council meeting, the Council member Neoma Jarden stated that the City of Reno could simply acknowledge receipt of the BIS submitted by staff, rather than accepting it.  In other words, as long as the paper was in the record, it did not

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

matter what it said.   *See* Exhibit D, Minutes at p. 7.   The City Council therefore never "considered" the report.

169.   There was never a vote to accept the conclusions, or failure to make conclusions, of the BIS.

170.   Instead, at the same April 24, 2019 public meeting, as the BIS was first presented, the Reno City Council voted to enact the proposed amendments to Chapters 4 and 5, but not to Title 18 of the Reno Municipal Code.

171.   The Reno Charter requires all amendments to the Reno Municipal Code be adopted at two public meetings before it can be effective.

172.   On May 8, 2019, the Reno City Council had a second public meeting and again adopted the proposed amendments to RMC Chapters 4 and 5, but not to Title 18.

173.   Therefore, if the April 24, 2019 vote was not valid, which it was not, then the legislation was passed by a vote at only one public meeting, which means it is not legally effective under the City Charter.

174.   If the May 8, 2019 vote was the second vote, then the Defendant City of Reno failed to follow the requirement of NRS 237.080 that the BIS be considered by the City Council at a public meeting at least ten days before it can be voted upon.

175.   In addition, the amendments to RMC Chapter 5.06 cannot possibly be based upon a properly submitted BIS, first because the City Council merely received but did not consider the BIS submitted by staff and second, the BIS submitted did not fulfill the statutory mandate of quantifying the adverse impacts of the proposed legislation on the income to the stakeholders, i.e. the under 21 year old licensed strippers, or the clubs. Nor did the BIS consider less restrictive or onerous alternatives, as required by statute.

176.   On or about May 8, 2019, Plaintiffs' counsel filed the required appeal to the Reno City Council of the BIS, a copy of which is attached hereto as Exhibit B.

177.   To date, there has been no reconsideration of the BIS.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

178.    Plaintiffs object to the BIS for the reasons stated in Exhibits A and B and request that any rule or regulation passed after this BIS was "received but not accepted" be declared void *ab initio*.

179.    WHEREFORE, Plaintiffs pray judgment against Defendants and each of them, on its Fourth Cause of Action, as follows:

a.    That this Court issue an order declaring void the May 8, 2019 amendments to RMC Chapter 5.06 on the basis of Defendants' failure to consider a proper Business Impact Statement pursuant to NRS 237.090(1) or reliance on a defective Business Impact Statement, as described by NRS 237.100(2);

b.    That this Court issue an order awarding Plaintiffs reasonable attorney's fees and costs as allowed by statute;

c.    That this Court issue an order awarding such further relief as the court may deem just.

Dated: November 15, 2019

Respectfully submitted,
/s/ Mark R. Thierman
Mark R. Thierman

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com