UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CATHERINE CASTELLANOS, *et al.*, | Case No. 3:19-cv-00693-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| CITY OF RENO, *et al.*, | |
| Defendants. | |

## I.    SUMMARY

In this putative class action, adult interactive cabaret performers and patrons challenge provisions of the Reno Municipal Code as violating the First and Fourteenth Amendments of the Constitution. (ECF No. 1.) Before the Court is Plaintiffs' motion to certify three classes: the Dancers Class, the All Female Dancers Class, and the 18 to 21 Year Old Patron Class.[1] (ECF No. 49 ("Motion").) The Court heard argument on the Motion on July 26, 2021.

As further explained below, the Court finds that Plaintiffs have failed to demonstrate the requirements for class certification are met for each class. Specifically, Plaintiffs have not shown that joinder would be impracticable for the Under 21 Dancers Class, that proposed class counsel is adequate to represent the Under 21 Dancers and All Female Dancers Classes, that the Named Plaintiffs' claims are typical of the entire All Female Dancers Class, or that the 18 to 21 Year Old Patron Class is so numerous that a class mechanism is preferable to an individual action. Accordingly, the Court will deny Plaintiffs' Motion as to each proposed class.

///

///

---

[1]Defendants responded (ECF No. 52) and Plaintiffs replied (ECF No. 55.)

## II.     BACKGROUND

Named Plaintiffs are seven adult interactive cabaret performers and one adult interactive cabaret patron. Plaintiffs challenge several provisions of the Reno Municipal Code ("RMC"), which were amended and adopted in 2019.

### A.     Amendments to the Reno Municipal Code

On May 8, 2019, the Reno City Council adopted ordinances amending RMC provisions applicable to adult interactive cabarets, performers, and patrons. (ECF No. 52-4 at 27-30.) As part of those amendments, the City deleted certain licensing provisions from Chapter 8 of the RMC, made certain modifications, and incorporated them into Chapter 4. (ECF Nos. 52-5, 52-6.) Chapter 8 of the RMC addresses "Public Peace, Safety, and Morals," and Chapter 4 is Reno's "Business License Code." (ECF Nos. 52-5, 52-6.) The City also amended some provisions in Chapter 5, which addresses "Privileged Licenses, Permits and Franchises." (ECF No. 52-8.)

#### 1.     Adult Interactive Cabaret Performer Defined

Relevant to each of Plaintiffs' challenges is how the City defines an "adult interactive cabaret performer. The definition is found in Chapters Four and Five of the RMC:

> any person male or female who is an employee or independent contractor of an adult interactive cabaret and who, with or without any compensation or other form of consideration, performs as a sexually-oriented dance, exotic dancer, stripper or similar dancer, actor, model, entertainer or worker whose performance on a regular and substantial basis emphasizes exposure of and focus on the adult interactive cabaret performer's specified anatomical areas . . .

(ECF Nos. 52-8 at 6 (RMC § 5.06.011(a)(i)); 52-6 at 4 (RMC § 4.07.007(b)).)[2] This definition turns in part on the definition of 'specified anatomical areas,' which the City states are:

> (1) Less than completely or opaquely covered: human genitals or pubic region; buttock; or female breast below a point immediately above the top

---

[2]These definitions are identical and are located in Chapter 4.07, titled "Adult Business" (ECF No. 52-6 at 3), and Chapter 5.06, titled "Adult Interactive Cabarets" (ECF No. 52-8 at 3).

of the areola; and (2) Human male genitals in a discernibly turgid state, even if completely or opaquely covered.[3]

(ECF No. 52-8 at 7 (RMC § 5.06.011(h)).)

These provisions are the foundation for Plaintiffs' first equal protection claim alleged by the All Female Dancers Class. (ECF No. 1 at 27-31)

### 2.   Age Restriction

A provision the City Council deleted from Chapter 8, modified, and added to Chapter 5 is RMC § 5.06.080, "Adult interactive cabaret operations." (ECF No. 52-8 at 13-14.) In relevant part, the new section states:

No person, whether patron, performer, or otherwise, under the age of eighteen years shall be admitted to, or permitted to remain on the premises of, an adult interactive cabaret. No person, including employees and performers, under the age of twenty-one years shall be admitted to, or allowed to remain on the premises of, an adult interactive cabaret wherein alcohol is provided, served, sold, or consumed.[4]

(*Id.* (RMC § 5.06.080(b).) The previous iteration of this regulation stated "[n]o *patron* under the age of 21 years shall be admitted to an adult interactive cabaret wherein alcohol is provided, served, or consumed," but did not bar employees or performers who were under 21 from working at an adult interactive cabaret where alcohol was served. (ECF No. 52-5 at 7 (RMC § 8.21.060(b)) (emphasis added).) The only restriction on performers in the previous regulation was the prohibition for all persons under eighteen from being admitted to or remaining on the premises of adult interactive cabarets. (*Id.*) Under the newly enacted regulation, performers and patrons alike under the age of 21 may not be admitted to an adult interactive cabaret that served alcohol.

///

///

---

[3]Only the text in § 5.06.011(h)(2)—"Human male genitals in a discernibly turgid state, even if completely or opaquely covered."—was added by the 2019 amendment. (ECF Nos. 52-5 at 4; 52-8 at 7.)

[4]This provision formerly appeared at RMC § 8.21.060(b) under "Adult interactive cabaret regulations.

3

1       This provision is the basis for Plaintiffs' second equal protection claim alleged by

2   the Under 21 Dancers Class and the 18 to 21 Year Old Patron Class, as well as the Under

3   21 Dancers' Class's regulatory taking claim. (ECF No. 1 at 32-36.)

4   ### 3.   Work Cards and Business Licenses

5       The City Council also deleted provisions regarding work card requirements for

6   adult interactive cabaret performers from Chapter 8, and added similar provisions to

7   Chapter 5. (ECF Nos. 52-5 at 4-5 (RMC § 8.21.040(a); 52-8 at 12 (RMC 5.06.080(a)).)

8   The old provision required the "owners or operators of any adult interactive cabaret" to

9   ensure that "each independent contractor or subcontractor has a current business license

10   and work card" prior to contracting for their services. (ECF No. 52-5 at 4.) The old

11   provision further required the owner/operators to ensure "each adult cabaret performer

12   employed by them as an employee has a current and valid work card" prior to and during

13   the course of employment. (*Id.* at 5.) The new provision at RMC § 5.06.080(a) echoes

14   this sentiment, but is not identical:

15           No adult interactive cabaret licensee shall allow an employee to work who
            does have a valid work card and a performer to perform who does not have
16           a valid business license and valid work card, as required by Title 4 and Title
            5.

17

18   (ECF No. 52-8 at 12.) The new provision's language appears to differentiate between

19   'employees' and 'performers,' requiring the former to obtain only a work card but the latter

20   to obtain a work card and a valid business license. However, the definition of 'adult

21   interactive cabaret performer' includes "any person who is an employee or independent

22   contractor." (ECF No. 52-8 at 6 (RMC § 5.06.011(a)(i)).)

23       The amended RMC § 5.05.012 sets out the specific requirements for work cards.

24   (ECF No. 52-7 at 9.) "Each adult interactive cabaret employee and . . . performer

25   employed or conducting business as an independent contractor in an adult interactive

26   cabaret" must obtain a work card. (*Id.* (RMC § 5.05.012(a)).) The regulation goes on to

27   require "[a]n adult interactive cabaret performer shall maintain evidence of an active

28

1  business license," but does not distinguish between independent contractors and

2  employees. (*Id.* (RMC § 5.05.012(b)).)

3       This provision is the basis for Plaintiffs' regulatory taking claim alleged by the All

4  Female Dancers Class and the Under 21 Dancers Class. (ECF No. 1 at 35-37.)

5       **B.    Implementation and COVID-19**

6       As stated above, the amended RMC provisions were enacted on May 8, 2019.

7  (ECF No. 52-4.) On March 20, 2020, Governor Sisolak issued an emergency directive

8  closing non-essential businesses, including adult entertainment establishments.[5] At issue

9  in this litigation is the period between May 8, 2019, when the amended RMC provisions

10  went into effect, and March 20, 2020, when the clubs were closed due to the COVID-19

11  emergency. During this period, performers with the proper work cards and/or business

12  licenses were permitted to work at adult interactive cabarets, subject to the amended

13  RMC provisions. Moreover, patrons over the age of 21 were permitted to remain on the

14  premises of adult interactive cabarets that sold alcohol, but patrons and performers

15  between ages 18 and 21 were not.

16       Plaintiffs allege that their claims arose during this period of time because the

17  amended provisions (1) discriminate on the basis of sex and age; (2) impermissibly

18  interfere with their First Amendment rights of freedom of expression, both in performing

19  and viewing others' performances at adult interactive cabarets; and (3) work a regulatory

20  taking on the by depriving them of the right to perform after they paid for business

21  licensing and work cards. This suit followed.

22  ///

23

24       [5]Plaintiffs reference an executive order issued March 17, 2020, but do not attach
    any documentation to clarify. (ECF No. 49 at 19.) Defendants suggest that Plaintiffs are
25  referring to Emergency Directive 002, issued March 18, 2020, which mandated the
    general public "cease gathering at gaming establishments" effective March 17. 2020.
26  (ECF No. 52 at 4, n.3.) The Court takes judicial notice of Emergency Directive 003, issued
    March 20, 2020, which ordered that "Non-Essential Businesses . . . including, but not
27  limited to . . . adult entertainment establishments" must close by 11:59 p.m. that same
    day. *See* "Declaration of Emergency for COVID-19 – Directive 003,"
28  https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-20_-_COVID-
    19_Declaration_of_Emergency_Directive_003_(Attachments)/.

### III.    LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The party seeking class certification "must affirmatively demonstrate his compliance with" Federal Rule of Civil Procedure 23. *Id.* at 350. "Rule 23 does not set forth a mere pleading standard." *Id.* Instead, "certification is proper only if the 'trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy of representation. *See id.* at 349; *see also* Fed. R. Civ. P. 23(a).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). A Rule 23(b)(2) class is one where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *See Parsons v. Ryan*, 754 F.3d 657, 687 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).

In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite. The party seeking certification must demonstrate that an identifiable and ascertainable class exists. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). To satisfy the ascertainability requirement, a class must be determinable from objective, rather than subjective, criteria. *See id.* at 1303. The moving party must also affirmatively demonstrate that he or she meets the above requirements. *See Parsons*, 754 F.3d at 674. However,

6

1  a court should not "'turn class certification into a mini-trial' on the merits." *Edwards v. First*
2  *Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*,
3  657 F.3d 970, 983 n.8 (9th Cir. 2011)).

4  **IV.    DISCUSSION**

5          The Court must determine whether each class meets the four Rule 23(a)
6  prerequisites for certification. Because the All Female Dancers Class presents problems
7  with typicality and adequacy, the Court will not certify that class. While the Under 21
8  Dancers Class presents the same problems as the All Female Dancers Class, but with
9  an additional numerosity problem. The Court therefore will not certify that class. Finally,
10  Plaintiffs have failed to establish that the 18 to 21 Year Old Patron Class is sufficiently
11  numerous. Because that class will not be certified either, the Motion will be denied. The
12  Court will explain its reasoning for each class in turn.

13          **A.    All Female Dancers Class**

14          Plaintiffs initially sought to certify a class of "all female Adult Interactive Cabaret
15  Performers who were required to pay a fee to the City of Reno as a condition of dancing
16  topless." (ECF No. 49 at 2.) When further explaining the nature of the class, Plaintiffs
17  asserted the "essential characteristic of a member of the All Female Dancers Class is
18  simply being a female licensed topless dancer in Reno." (*Id.* at 6-7.) The crux of Plaintiffs
19  argument is that female performers may not dance topless without a work card and, in
20  some cases, a business license, while male dancers may dance topless without either.
21  (ECF No. 55 at 7-9.) Plaintiffs argue this distinction violates the equal protection clause
22  of the Fourteenth Amendment. (*Id.*)

23          Defendants argued in their opposition that such a class presented problems with
24  three of the Rule 23(a) requirements, in part based on discrepancies between performers
25  classified as independent contractors and those who were employees. (ECF No. 52 at
26  15-18.) First, Defendants argued that there were typicality and commonality issues with
27  a class comprised of both independent contractors and employees because the owners
28  of the adult interactive cabarets determined whether to consider performers independent

contractors or employees, which in turn required some performers to obtain a business license in addition to a work card, as opposed to a work card alone. (*Id.* at 15-16) That determination, according to Defendants, is the actual cause of the bulk of putative class members' damages. (*Id.*) Defendants further argued that class counsel does not meet Rule 23(a)(4)'s adequacy requirement. (*Id.* at 17-18.) Because class counsel represents the owner of the majority of Reno's adult interactive cabarets opposing some female performers in pending labor litigation, Defendants argue there is at least an appearance of divided loyalties, if not an actual conflict of interest. (*Id.*)

Plaintiffs in their reply moved to redefine the All Female Dancers Class. (ECF No. 55 at 2.) The proposed new definition includes "all females who are, or should legally be, licensed by the City of Reno as an adult interactive cabaret performer, as that term is defined in RMC 5.06.011." (*Id.* at 2-3.) Arguing that performers benefit most from a damages perspective by assuming that they are independent contractors rather than employees, the reply states that "Named Plaintiffs in this lawsuit agree with Counsel's position that dancers are independent contractors rather than employees." (*Id.* at 3.) Plaintiffs proceed to argue that the RMC provisions burden performers beyond the employee/independent contractor distinction because the gendered regulation also impacts whether an establishment is classified as an adult interactive cabaret to begin with. (*Id.* at 8-9.)

The Court agrees with Defendants' argument that the Named Plaintiffs' claims present commonality and typicality concerns that defeat class certification. While Plaintiffs' attempt to redefine all performers as independent contractors may theoretically cure the All Female Dancers' Class commonality and typicality problems, the new class definition and its explanation further exacerbates the adequacy issue. For these reasons, the Court will not certify the All Female Dancers Class.

### 1.    Commonality and Typicality

Defendants argue that the Named Plaintiffs are not typical of the class and that the class lacks commonality. Both the commonality and typicality arguments stem from the

1  distinction between performers who are employees and those who are independent

2  contractors. Plaintiffs allege in their Motion that each Named Plaintiff performer was

3  registered as an independent business. (ECF No. 49 at 5.) Although Plaintiffs' argument

4  appears to shift somewhat between the Complaint, Motion, and reply, the Court

5  understands that the proposed All Female Dancers Class alleges that the definition of

6  "interactive adult cabaret performer" discriminates on the basis of gender by requiring

7  female performers to obtain work cards and/or business licenses while male performers

8  are not so required.

9  Defendants note that not only are the Named Representatives classified as

10  independent contractors, but Plaintiffs Castellanos, Courtney, Jasper, Rachet, and

11  Stagner were each licensed independent business owners who had worked at a club

12  owned or operated by Keshmiri Entertainment Group ("KEG").[6] (ECF No. 52 at 10-12.)

13  KEG owns or operates three of the four licensed adult interactive cabarets in Reno—Wild

14  Orchid, Spice House, and Fantasy Girls ("KEG Clubs"). (*Id.* at 7-8.) Defendants assert

15  that KEG required its performers to sign an independent contractor agreement as a

16  condition of performance. (ECF Nos. 52 at 8; 52-11 at 20-29.) By contrast, the fourth and

17  only licensed adult interactive cabaret in Reno not owned or operated by KEG—Men's

18  Club—permits performers to choose to be either hired as a part-time employee or to work

19  as an independent contractor. (ECF Nos. 52 at 8-9; ECF No. 52-12.) In light of KEG's

20  requirements, Defendants argue that class members who performed at KEG Clubs were

21  not obligated to register as independent businesses because of the amended RMC

22  provisions. Rather, class members incurred those costs because KEG required them to

23

24  _____

25  [6]Three of the Named Plaintiffs—Morales, Wells, and Whittle—did not respond to Defendants' written discovery requests and the Court previously deemed their answers to Defendants' requests for admissions admitted. (ECF Nos. 32, 33, 46.) Accordingly, the

26  Court considers that Plaintiffs Morales, Wells, and Whittle have been deemed to have admitted they did not obtain business licenses (ECF Nos. 32-3 at 5; 32-6 at 5; 32-8 at 5),

27  and further that they were classified as independent contractors (ECF Nos. 32-3 at 6; 32-6 at 6, 32-8 at 6). As Morales, Wells, and Whittle have not complied further with this

28  litigation, the Court will focus on the remaining five Named Plaintiff performers.

9

1  each register as an independent business owner instead of hiring them as part-time

2  employees.

3       The Court agrees that the distinction between performers who are independent

4  contractors and performers who were part-time employees divides the class and defeats

5  commonality. To satisfy Rule 23(a)'s commonality requirements, "a plaintiff must

6  'affirmatively demonstrate' that their claims depend upon at least one common contention

7  the truth or falsity of which 'will resolve an issue that is central to the validity' of each one

8  of the class members' 'claims in one stroke.'" *James v. Uber Techs. Inc.*, 338 F.R.D. 123,

9  131 (N.D. Cal. 2021) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). The Court

10  agrees with Defendants that KEG Clubs' requirement that all performers register as

11  independent business owners splits those class members' arguments (and Defendants'

12  defenses) from the arguments of class members who were not required to incur the

13  business licensure requirements as a condition precedent to performing. The class

14  members' claims do not rise and fall together, but suffer from an interceding action by

15  KEG. Because the All Female Dancers Class is seeking "disgorgement of all fees" paid

16  for their work cards and licenses, the Court anticipates that Defendants will focus on the

17  causation distinction throughout the litigation, which may prove dispositive to some class

18  members but not others. Accordingly, the Court finds that commonality is not met.

19       Typicality is not met for similar reasons. "The test of typicality is whether other

20  members have the same or similar injury, whether the action is based on conduct which

21  is not unique to the named plaintiffs, and whether other class members have been injured

22  by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

23  Cir. 1992). "The purpose of the typicality requirement is to assure that the interest of the

24  named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover

25  N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). None of the Named Plaintiffs were

26  employees, nor do they contest their classification as independent contractors. But

27  several class members do. As Defendants note, many absent class members have

28  objected to their classification as independent contractors in the pending *Harris* suit. (ECF

No. 52 at 17.) Moreover, Plaintiffs do not account for potential class members who were never classified as independent contractors and were therefore not obligated to obtain business licenses. The Named Plaintiffs are therefore not typical of the entire class.

The Court is not persuaded by Plaintiffs' argument that the distinction between performers who are employees and independent contractors is immaterial. Contrary to Plaintiffs' concerns, the Court does not rely on the finding in another suit that some performers were misclassified to conclude that some performers here are or are not employees.[7] The fact of whether the class members were in fact employees or independent contractors is not directly at issue in this case, and the Court need not determine whether each class member is properly classified. Instead, the Court finds there is a lack of class cohesion because the Named Plaintiffs, who were each classified as independent contractors, ask that all members of the All Female Dancers Class be treated as independent contractors despite the fact that some class members disagree with that classification and its resulting licensure costs. (ECF No. 55 at 2-3.) But the Court cannot ignore that some class members are not independent contractors, or that some consider themselves misclassified.

Plaintiffs' attempt to redefine the All Female Dancers Class in their reply does not cure these defects, but raises new concerns. While the new definition purports to assume that all class members are independent contractors, this revision does not address Defendants' argument that KEG's contracting agreement is the proximate cause of performers being required to obtain business licenses. Even if the new definition did resolve the commonality and typicality concerns, the Court would still deny the Motion because proposed class counsel is not adequate to represent the All Female Dancers Class.

---

[7]That case is *Harris v. Diamond Dolls of Nevada, LLC*, Case No. 3:19-cv-00598-RCJ-CLB. The Court likewise finds Plaintiffs' application of *Myers v. Reno Cab Co., Inc.*, -- P.3d --, 2021 WL 3238818 (Nev. Jul. 29, 2021), inapposite. (ECF No. 58 at 3.) The class members may be employees under the FLSA but not employees for other purposes—but that does not change the fact that Named Plaintiffs seek to represent a class of performers that includes a subgroup of persons alleging they were improperly required to register as independent business owners by KEG Clubs.

1

### 2.  Adequacy

2      Defendants' adequacy argument centers on proposed class counsel's

3  representation of Kamy Keshmiri, owner KEG, in prior and pending litigation. As noted

4  above, Keshmiri and KEG own or operate three of the four adult interactive cabarets

5  Plaintiffs reference in the Complaint—Wild Orchid, Fantasy Girls, and Spice House.

6  Proposed class counsel represents Keshmiri in two Fair Labor Standards Act lawsuits

7  filed by dancers in this District.[8] One of those suits, *Harris v. Diamond Dolls of Nevada,*

8  *LLC*, is still pending. In that suit, performers sued Keshmiri and KEG Clubs for allegedly

9  misclassifying them as independent contractors.[9] Some of the opt-in class members in

10  *Harris* are female adult interactive cabaret performers who were classified as independent

11  contractors in Reno during the time period at issue here. (ECF No. 52 at 18.) As a result,

12  proposed class counsel is litigating against absent class members in ongoing litigation

13  that involves overlapping issues with this case.

14      "The responsibility of class counsel to absent class members whose control over

15  their attorneys is limited does not permit even the appearance of divided loyalties of

16  counsel." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1446 (9th Cir. 1995). The

17  'appearance' of divided loyalties includes even situations where there may be "potentially

18  conflicting interests and is not limited to instances manifesting such conduct." *Id.* The All

19  Female Dancers Class purports to represent all female adult interactive cabaret

20  performers who were required to pay a fee as a condition of performance. (ECF No. 49

21  at 2.) If the Court were to certify the All Female Dancers Class, proposed class counsel

22  would then be representing class members who he was opposing in currently pending

23  litigation.

24      The Court does not doubt proposed class counsel's experience or qualifications to

25  litigate a class action suit. But when considering whether class counsel and the named

26

27      [8] *Becker v. Keshmiri,* Case No. 3:19-cv-00602-LRH-WGC, and *Harris v. Diamond Dolls of Nevada, LLC*, Case No. 3:19-cv-00598-RCJ-CLB.

28

      [9] *Harris*, Case No. 3:19-cv-00598-RCJ-CLB (ECF No. 1 at 2.)

representatives are adequate, the Court is concerned most with the interests of absent class members. *See Kayes*, 51 F.3d at 1446. Even if no actual conflict manifests in this litigation, as Plaintiffs contend, the circumstances raise an appearance of proposed class counsel's divided loyalties between the performers and their employer, a long-standing client of proposed class counsel. The appearance of a potential conflict is intensified by the fact that all named representatives allege they are independent contractors, while many performers in the Reno area are currently alleging that they are employees under the Fair Labor Standards Act and that proposed counsel's clients, Keshmiri and KEG Clubs, misclassified them.

Plaintiffs exacerbated the appearance of divided loyalties in their reply by attempting to redefine the class to either exclude members who did not conform with their earlier definition, or to remove the classification issue by simply assuming all members are independent contractors. Instead of proposing subclasses to mitigate the problem of divisions in the All Female Dancers Class, Plaintiffs instead ask the Court to treat all class members as independent contractors and ignore the potential causation problems caused by Keshmiri and KEG. Moreover, Plaintiffs' articulation of how the amended RMC provisions burden the All Female Dancers Class members expressly raises how the provisions also regulate the adult interactive cabarets themselves. When considered holistically, the Court finds that there is at least an appearance of divided loyalties between the class members and proposed class counsel's other clients whose interests are opposed to class members in currently pending litigation.

Due to the protective concerns of Rule 23(a)(4) and for the reasons explained above, the Court therefore will deny the Motion as to the All Female Dancers Class.

**B.    Under 21 Dancers Class**

Plaintiffs also seek to certify a class of "all Adult Interactive Cabaret Performers who are between 18 and 21 years of age and who have a work card and/or license as required under any provision of the Reno Municipal Code[ ] . . . as well as all potential Adult Interactive Cabaret Performers at any of the existing licensed Adult Interactive

13

1  Cabarets in Reno." (ECF No. 49 at 2.) The Under 21 Dancers Class is a subclass of the
2  All Female Dancers Class, but claims additionally that RMC § 5.06.080(b) impermissibly
3  barred them from performing because RMC § 5.06.080(b) infringes on their First
4  Amendment right to perform at adult interactive cabarets. Plaintiffs assert there are 44
5  known members of the Under 21 Dancers Class, not including the potential class
6  members who would have begun performing but were deterred by the amended RMC
7  provisions. (ECF No. 49 at 6.) Defendants argue that the Under 21 Dancers Class should
8  not be certified because Plaintiffs have not shown joinder is impracticable. (ECF No. 52
9  at 13-15.) The Court agrees with Defendants.

10  ### 1.    Numerosity

11  Rule 23(a)(1)'s numerosity requirement means that "the difficulty or inconvenience
12  of joining all members of the class makes class litigation desirable." *Acuna v. S. Nev.*
13  *T.B.A. Supply Co.*, 324 F.R.D. 367, 380 (D. Nev. 2018). "Generally, courts have held that
14  numerosity is satisfied when the class size exceeds forty members." *Anderson v. Briad*
15  *Rest. Grp., LLC*, 333 F.R.D. 194, 202 (D. Nev. 2019). But the analysis "requires
16  examination of the specific facts of each case and imposes no absolute limitations."
17  *Acuna*, 324 F.R.D. at 380. When considering whether joinder is practicable, courts may
18  evaluate "whether the proposed class members are known and identifiable," the
19  "geographical diversity of class members," and the "ability of individual claimants to
20  institute separate suits." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319-20 (9th Cir.
21  1982), *vacated on other grounds by* 459 U.S. 810 (1982).

22  Defendants argue several reasons why numerosity is not met for the Under 21
23  Dancers Class. First, Defendants contend the accurate number of class members is not
24  44, but 35, as that is the number of performers between 18 and 21 when the litigation was
25  initiated who had valid, unexpired licenses. (ECF No. 52 at 14.) Next, Defendants argue
26  that even with a higher number of class members, joinder would be practicable in this
27  instance because the identities of all then-working performers are publicly available. (*Id.*)
28  Third, Defendants note that 38 of the 44 identified Under 21 Dancers Class members are

14

geographically concentrated in Nevada, with remaining residing in Northern California. (*Id.*) Finally, Defendants argue that because the alleged damages amount per class member is in the thousands, unnamed class members will be more likely to pursue their claims individually should they so desire. (*Id.* at 15).

Setting aside Defendants' argument that only 35 class members had valid licenses at the time this suit was filed, the Court finds that joinder would be practicable in this circumstance. Not only are there relatively few potential class members, but they are easy to locate and not widely geographically dispersed. Moreover, any plaintiffs seeking lost wages would have sufficient incentive to bring their own claims.

Plaintiffs' argument that privacy concerns of the litigants favors certification is unpersuasive. Not only is the identifying information for each under 21 performer already available via the various licensing procedures, any additional concern stemming from the publicity of litigation could be mitigated by moving to appear anonymously. Although Plaintiffs asserted at oral argument that certification provides anonymity for class members who could not proceed under a fictitious name in federal court, they are mistaken.[10] District courts may authorize parties to proceed under fictitious names pursuant to their authority to manage pretrial proceedings under Rule 16(b), and may issue protective orders limiting disclosures of a party's name under Rule 26(c). *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (noting there is a balance between a party's need for anonymity the public's interest in open judicial proceedings); *see also Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) (outlining the four-factor test for permitting fictitious name use).

Finally, Plaintiffs seek to include all persons who would have begun working as an adult interactive cabaret performer but were deterred from doing so by the amended RMC

---

[10]In fact, Plaintiffs acknowledge in their reply that U.S. Magistrate Judge Valerie Cooke permitted an adult interactive cabaret performer to proceed under a pseudonym in *Discopolus LLC v. City of Reno*, Case No. 3:17-cv-00574-MMD-VPC. Such a path would be available for performers who fear to bring their claims in their own name.

provisions. The Court will not consider these speculative class members in its numerosity consideration. While there may indeed be some, even many, who fit this description, Plaintiffs have not provided any evidence that these potential class members exist, how many class members there are, or what criteria establishes them as a member of the Under 21 Dancers Class. The Court agrees with Defendants that the potential Under 21 Dancers comprise a class that is too nebulous to certify. (ECF No. 52 at 24-25.) Without more, the Court cannot use the speculative potential performers to satisfy numerosity of the Under 21 Dancers Class.

### 2. Adequacy

Even if the Court were to find that joinder was impractical, however, the adequacy concerns that the Court explained above likewise apply to the Under 21 Dancers Class. Proposed class counsel cannot avoid the appearance of divided loyalties in representing a class of performers while simultaneously representing their employers. First, because the Under 21 Dancers Class assumes the claims of the All Female Dancers Class, the same issues Court explains above apply here. But the issues unique to the Under 21 Dancers Class also implicate appearances of divided loyalties. Defendants argue that it is not the City, but the owners of the adult interactive cabarets who decide whether to serve alcohol, thereby triggering the provisions that bar performers under 21 from remaining on the premises. While the Court does not weigh in on the merits of the City's argument, Plaintiffs once again must consider whether KEG shares in the causation of the Under 21 Dancers Class members' damages. Because proposed class counsel still represents Keshmiri and KEG, there is at least an appearance that the class members' interests may be compromised to promote other clients' interests.

Because both numerosity and adequacy are not met, the Court will deny the Motion as to the Under 21 Dancers Class.

### C. 18 to 21 Year Old Patron Class

Unlike the other proposed classes, the 18 to 21 Year Old Patron Class seeks only injunctive and declaratory relief. Defendants argue that Plaintiffs lack standing to bring an

1    age-based discrimination claim because they cannot demonstrate that they are treated

2    differently from a similarly situated group. The Court is unpersuaded by this argument

3    because Plaintiffs argue that they are treated differently from other 18 to 21 year olds who

4    patron establishments that serve alcohol, not that they are treated differently from patrons

5    over 21.

6          However, plaintiffs who seek certification under Rule 23(b)(2) must still

7    demonstrate the four requirements of Rule 23(a). Because Plaintiffs have failed to

8    demonstrate numerosity, the Court will deny the Motion.

9                         **1.    Standing**

10         Defendants argue that because persons under 21 are not similarly situated to

11   those over 21, Plaintiffs cannot demonstrate an injury in fact. (ECF No. 52 at 21.)

12   Defendants misunderstand Plaintiffs argument. Plaintiffs do not assert that they are

13   treated differently from those over 21, but that they are treated differently from 18 to 21

14   year old patrons of other establishments that serve alcohol. Specifically, Plaintiffs argue

15   the law prohibiting under 21 patrons from remaining on the premises of establishments

16   that are not adult interactive cabarets but do serve alcohol is not enforced and that these

17   regulations are not narrowly tailored[11] because other establishments that serve alcohol

18   may use other measures to prevent serving to underage persons, such as carding patrons

19   at the bar or issuing wristbands to those under 21. (ECF No. 55 at 10-11.) If Plaintiffs are

20   correct that the generally applicable statutes, NRS § 202.030 and RMC § 5.07.030, are

21   not similarly enforced at other establishments, then they have articulated an injury for

22   which enjoining § 5.08.080(b) may grant relief.

23   ///

24   ///

25

26         [11]The Court notes that "[s]tates may discriminate on the basis of age without
     offending the Fourteenth Amendment if the age classification in question is rationally
27   related to a legitimate government interest." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83
     (2000). Accordingly, Defendants will not be required to "match age distinctions and the
28   legitimate interests they serve with razorlike precision." *Id.* However, this is a question on
     the merits for the Court to determine later.

1

### 2. Numerosity

2   The seven named plaintiff dancers, as under 21 performers, and Plaintiff Maryann

3   Rose Brooks, as a patron, seek to represent a class of "thousands of people between 18

4   and 21 years of age" who would like to visit a strip club in Reno but are prohibited from

5   doing so. (ECF No. 49 at 8.) Although Plaintiffs aver that there are "countless" persons

6   who fit the class definition (*id.* at 5), they provide no evidence or facts to support this

7   allegation, despite the fact that discovery is now completed.[12] Because "[m]ere

8   speculation as to the number of class members is insufficient," the Court lacks the

9   requisite information to determine whether numerosity is satisfied. *Berry v. Baca*, 226

10  F.R.D. 398, 403 (C.D. Cal. 2005) (finding numerosity was not met when plaintiff alleged

11  10,000 similarly situated plaintiffs but only had evidence of 33 possible members). The

12  Court therefore will deny the Motion as to the 18 to 21 Year Old Patron Class.

13  Defendants do not argue that numerosity is not met for the 18 to 21 Patron Class.

14  The Court arrives at this conclusion through its own "rigorous analysis." *Wal-Mart*, 564

15  U.S. at 350. The party seeking class certification "must affirmatively demonstrate his

16  compliance with" Federal Rule of Civil Procedure 23. *Id.* at 350. "Rule 23 does not set

17  forth a mere pleading standard." *Id.* Instead, "certification is proper only if the 'trial court

18  is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

19  satisfied.'" *Id.* at 351. However, because the issue is a lack of evidence rather than

20  demonstrated evidence to the contrary, and because it was not disputed by Defendants

21  in their opposition to the Motion, the Court will permit Plaintiffs to file a renewed motion

22  within 30 days if they wish to cure the numerosity issue as to the 18 to 21 Patron Class

23  only.[13] If Plaintiffs do not file an amended motion to certify only the 18 to 21 Patron Class

24  within 30 days, Plaintiffs may proceed with their claims for injunctive relief as individuals.

25

26   [12]The scheduling order set the discovery deadline as April 2, 2021 (ECF No. 42 at 2), over a month after Plaintiffs' filing of the Motion on February 25, 2021 (ECF No. 49).

27   [13]Defendants argue that the class action mechanism is not necessary for Named
28  Plaintiffs to pursue injunctive relief. (ECF No. 52 at 22.) Apart from the fact that Defendants argue in the same breath that Plaintiffs lack standing, the Court considers the

1

## V.    CONCLUSION

2    The Court notes that the parties made several arguments and cited to several

3 cases not discussed above. The Court has reviewed these arguments and cases and

4 determines that they do not warrant discussion as they do not affect the outcome of the

5 motion before the Court.

6    It is therefore ordered that Plaintiffs' motion to certify class (ECF No. 49) is denied.

7    It is further ordered that Plaintiffs are granted leave to file a renewed motion within

8 30 days as to the 18 to 21 Year Old Patron Class only. The motion must establish that

9 the class meets the numerosity requirement as outlined herein. If Plaintiffs do not file a

10 renewed motion, they may proceed with their claims individually.

11    DATED THIS 16th Day of August 2021.

12

13

14    MIRANDA M. DU
      CHIEF UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26    risk of mootness should class certification be denied. Given that the Complaint was filed
      in 2019 and age of the class members in question is limited to a three year age period,
27    there is a risk that all Named Plaintiffs could turn 21 before the case is resolved, risking
      that injunctive relief would be unnecessary to redress their harm. *Cf. De Funis v.*
28    *Odegaard*, 416 U.S. 312, 318-19 (1974) (explaining that a student challenging admissions
      procedures claim was moot because he would soon graduate).

19