UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CATHERINE CASTELLANOS, *et al.*, | Case No. 3:19-cv-00693-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| CITY OF RENO, *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiffs Catherine Castellanos, Lauren Courtney, Rachael Jasper, Brianna Morales, Victoria Rachet, Lily Stagner, Natalee Wells, Cecilia Whittle, and Maryann Rose Brooks sued Defendants the City of Reno and Michael Chaump (collectively, the "City") to challenge the City's regulations affecting adult interactive cabarets ("AICs") and AIC performers (commonly known as strip clubs and strippers, respectively). Before the Court are Plaintiffs' motion for partial summary judgment (ECF No. 62) and Plaintiffs' motion for preliminary injunction (ECF No. 61).[1] Plaintiffs seek declaratory judgment that the City failed to comply with Nevada law in adopting certain amendments to the Reno Municipal Code ("RMC") targeting AICs. (ECF No. 62 at 2.) Plaintiffs also seek to enjoin the City from enforcing these provisions as unconstitutional. (ECF No. 61 at 2.) For the reasons described below, the Court grants in part and denies in part Plaintiffs' motion for partial summary judgment. The Court also denies Plaintiffs' motion for preliminary injunction.

---

[1]The City responded to both motions (ECF Nos. 67, 63), and Plaintiffs replied (ECF Nos. 70, 66).

1    ## II.    BACKGROUND[2]

2        Plaintiffs Castellanos, Courtney, Jasper, Morales, Rachet, Stagner, Wells, and

3    Whittle are AIC performers (also referred to as dancers), and Plaintiff Brooks is an AIC

4    patron. (ECF No. 1 at 1-2.) Plaintiffs were all between the ages of 18 and 21 at the

5    commencement of this action. (*Id.*) Plaintiffs challenge several provisions of RMC

6    Chapters Four and Five, which were amended and adopted in 2019. (*Id.* at 3.)

7        ### A.    Amendment Proceedings

8        The Reno City Council adopted several amendments to the RMC in the spring of

9    2019. The first public meeting to consider the proposed amendments was held on April

10   24, 2019. (ECF No. 67-16 at 3-5.) A second public meeting was held fourteen calendar

11   days later—on May 8, 2019. (ECF No. 67-20 at 10-11.)

12       Prior to the first meeting, Plaintiffs' counsel sent a letter to the City Council outlining

13   several objections to the proposed amendments. (ECF No. 62-1 at 5-26.)

14       At the April 24 meeting, the City Council considered whether to adopt the Business

15   Impact Statement ("BIS") prepared in accordance with NRS Chapter 237 to examine the

16   economic impact of the proposed changes to the RMC. (*Id.* at 30-34.) The submitted BIS

17   found that the amendments would not impose a direct or significant economic burden on

18   a business nor directly restrict the formation, operation, or expansion of a business. (*Id.*

19   at 31.) Councilmember Devon Reese "expressed concerns regarding financial impacts,"

20   and Councilmember Naomi Duerr "stated that until we have a more complete, thorough

21   and easy to understand BIS she is not ready to adopt ordinances on Titles 4, 5 and 8."

22   (*Id.* at 32-33.) Duerr indicated that she would move to direct City staff to "expand and

23   enhance the BIS." (*Id.* at 33.) An attorney from the Reno City Attorney's office "confirmed

24   there is not a requirement to accept the BIS" and that what has been "included in the

25   meeting packet . . . is sufficient for legal purposes." (*Id.*) After hearing public comment,

26   Councilmember Neoma Jardon stated she was "not in favor of digging into the BIS more"

27

28
_____

[2]The following background facts are undisputed unless noted otherwise.

1    and moved to "acknowledge receipt of the Business Impact Statement." (*Id.* at 34.) The

2    City Council approved the motion to acknowledge receipt of the BIS, five to two. (*Id.*)

3         The City Council next considered whether to amend the RMC. (*Id.*) The attorney

4    from the Reno City Attorney's office indicated that Titles Four, Five, and Eight address

5    the operation of AICs, while Title 18 addresses their location. (*Id.* at 35.) The City Council

6    approved the amendments relating to performers' minimum age (RMC § 5.06.080(b)),

7    private rooms (RMC § 5.06.080), lighting (RMC § 5.06.070), work cards (RMC §

8    5.05.012), video monitoring (RMC § 5.06.090), policies and procedures (RMC §

9    5.06.100), and responsibilities of licensees (RMC § 5.06.110). (*Id.* at 35-39.) The City

10   Council further referred corresponding Bill Nos. 7086 and 7087 for a second reading of

11   the approved amendments. (*Id.* at 39-40.)

12        On May 8, 2019, the City Council conducted a second reading of these

13   amendments and adopted, by unanimous vote, ordinances amending the corresponding

14   RMC provisions applicable to AICs and AIC performers. (ECF No. 67-23 at 27-30.)

15        **B.    Code Provisions**

16        The Court incorporates by reference its description of the relevant amendments

17   provided in the Court's order denying class certification in this case under Section II.A,

18   titled "Amendments to the Reno Municipal Code." (ECF No. 60 at 2-5.)

19        **C.    This Action**

20        Plaintiffs assert four claims in their Complaint: (1) "Equal Protection – Gender

21   Discrimination"; (2) "Equal Protection – Age Discrimination"; (3) "Regulatory Taking

22   Without Just Compensation"; and (4) "Denial of Due Process – NRS 237.080 and

23   237.090." (ECF No. 1 at 27-39.)

24   **III.   LEGAL STANDARDS**

25        **A.    Summary Judgment**

26        "The purpose of summary judgment is to avoid unnecessary trials when there is

27   no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

28   18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate

when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

4

1

2      **B.      Preliminary Injunction**

3      Federal Rule of Civil Procedure 65 governs preliminary injunctions. "'An injunction

4      is a matter of equitable discretion' and is 'an extraordinary remedy that may only be

5      awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst.*

6      *v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council,*

7      *Inc.*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must

8      demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm;

9      (3) that the balance of hardships favors the plaintiff; and (4) that the injunction is in the

10     public interest. *See Winter*, 555 U.S. at 20. A plaintiff may also satisfy the first and third

11     prongs under a "sliding scale" approach by showing serious questions going to the merits

12     of the case and that a balancing of hardships tips sharply in plaintiff's favor. *All. for the*

13     *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (holding that the Ninth

14     Circuit's "sliding scale" approach remains valid following the *Winter* decision). The

15     plaintiff, however, must still show a likelihood of irreparable harm and that an injunction

16     is in the public interest. *See id.* at 1135; *see also id.* ("*Winter* . . . requires the plaintiff to

17     make a showing on all four prongs.").

18     **IV.   DISCUSSION**

19     Plaintiffs argue that the City failed to comply with the procedural requirements of

20     NRS Chapter 237 and, as a result, the resulting amendments to the RMC are void *ab*

21     *initio*. (ECF No. 62.) Plaintiffs also seek to enjoin the enforcement of these amendments

22     on constitutional grounds. (ECF No. 61.) The Court will consider whether Plaintiffs are

23     entitled to partial summary judgment before reaching the preliminary injunction motion.

24     **A.      Summary Judgment: Compliance with NRS Chapter 237**

25     Plaintiffs seek declaratory judgment that the amended RMC provisions are void *ab*

26     *initio* because the City failed to adequately consider the BIS in violation of NRS §§

27     237.080-237.090. (ECF No. 62.)

28

1            **1.    Jurisdiction**

2            But as a threshold matter, the City argues that the Court lacks jurisdiction to

3    consider whether it complied with NRS §§ 237.080-237.090 because: (1) Plaintiffs' claim

4    does not state a federal cause of action; and (2) Plaintiffs have not established that the

5    Court has supplemental jurisdiction over a version of the claim arising under state law.

6    (ECF No. 67 at 13-14.) The Court addresses each argument in turn and ultimately finds

7    that Plaintiffs have not stated a federal cause of action, but the Court has supplemental

8    jurisdiction over Plaintiffs' state-law claim.

9            **a.    Applicability of 42 U.S.C. § 1983**

10           In the Complaint, Plaintiffs allege that the failure to comply with the requirements

11   of NRS Chapter 237 resulted in a "denial of due process." (ECF No. 1 at 37.) Plaintiffs do

12   not articulate in the Complaint how, specifically, the City's alleged failure to adequately

13   consider the BIS deprived them of due process. Instead, Plaintiffs argue generally that

14   NRS § 237.140 states any failure to comply with Chapter 237's procedural requirements

15   renders the ordinances void *ab initio*. The City argues that Plaintiffs' claim alleging

16   violations of NRS Chapter 237 does not constitute a due process claim under Section

17   1983 as a matter of law. (ECF No. 67 at 12.) The Court agrees with the City and finds

18   that Plaintiffs fail to state a valid federal due process claim.

19           The Ninth Circuit has long recognized that "when a violation of state law causes

20   the deprivation of a right protected by the United States Constitution, that violation may

21   form the basis for a Section 1983 action." *Lovell By & Through Lovell v. Poway Unified*

22   *Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996). But "[i]t is axiomatic . . . that not every violation

23   of state law amounts to an infringement of constitutional rights." *Samson v. City of*

24   *Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012). "Federal due process does not

25   necessarily entitle a plaintiff to the same procedures provided by state law." *Roybal v.*

26   *Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017) (distinguishing that what process

27   is due under federal law is "determined by context" and is analyzed under the three-part

28   test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Accordingly, when "the state-

6

created protections reach beyond that guaranteed by federal law," the violation of procedure mandated by state law may not form a cause of action under § 1983. *Id.*; *see also Lovell*, 90 F.3d at 370 ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

Neither Plaintiffs' Complaint nor summary judgment motion clearly articulate how violating NRS §§ 237.080-237.090 would violate Plaintiffs' federal due process rights. In their summary judgment motion, Plaintiffs argue that voting on RMC § 5.06.080(b) the same day the BIS was first introduced deprived them of "time to respond." (ECF No. 62 at 23.) This is a valid argument. Indeed, NRS § 237.090(1) requires a city's governing body to consider the BIS "at a public meeting held at least 10 calendar days before the public meeting of the governing body held to adopt the proposed rule." The purpose of the 10-day interim period is not facially apparent from the statute, but other provisions suggest that public participation is at least one major goal. For example, NRS § 237.090(3) requires that the BIS be available "for public inspection at the time the agenda is first posted"—that is, even before its consideration at the first meeting. The information required to be disclosed in a BIS includes "an explanation of the manner in which other interested persons may obtain a copy" of community responses to request for comment. NRS § 237.090(1)(a). The Court therefore concludes that the Nevada legislature intended the BIS to provide information to more than just the governing body of a city, but also to give the public a meaningful opportunity to engage with its findings before a final vote.

Other courts in the Ninth Circuit that have considered whether a violation of state law constitutes a federal due process deprivation have declined to consider whether process was constitutionally inadequate if the plaintiff fails to allege specific, federal constitutional arguments. *See, e.g.*, *Grant v. Corral*, Case No. 2:19-cv-01495-MCE-CKD (PS), 2021 WL 826203, at *10 (E.D. Cal. Mar. 4, 2021) ("As plaintiff has not elected to advance any argument on this point, beyond the allegations of his complaint, the court

1  does not find this a sufficient basis for establishing a constitutionally inadequate

2  process.").

3      And Plaintiffs fail to make specific federal constitutional arguments here. Instead,

4  Plaintiffs look ahead to the eventual enforcement of the RMC provisions, arguing that

5  "[e]nforcing a law that is invalid for any reason violates the due process clause." (ECF No.

6  70 at 18.) But the Complaint alleges that voting on and enacting the RMC provisions was

7  a violation of Plaintiffs' due process rights. (ECF No. 1 at 37-38.) There are no allegations

8  in the Complaint that the invalid law has been enforced against Plaintiffs, nor are the

9  challenges in the summary judgment motion focused on enforcement.[3] The Court

10 therefore finds that Plaintiffs fail to state a federal due process claim. *See, e.g.*, *Grant*,

11 2021 WL 826203, at *10.

**b.    Supplemental Jurisdiction**

13     The City further argues that if Plaintiffs' "BIS claim" is not "valid" under Section

14 1983 and proceeds as a state law claim, the Court would lack subject-matter jurisdiction

15 over the claim. (ECF No. 67 at 14.) But the City does not dispute that the Court has federal

16 question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' other three claims. And

17 while it is true that the Court would lack federal question jurisdiction over the BIS claim if

18 it considers the BIS claim a state-law claim rather than a Section 1983 claim, a federal

19 court may, subject to exceptions not applicable here, exercise supplemental jurisdiction

20 over state-law claims which "are so related to claims in the action . . . that they form part

21 of the same case or controversy." 28 U.S.C. § 1367(a). "Nonfederal claims are part of the

22 same 'case' as federal claims when they 'derive from a common nucleus of operative fact

23 and are such that a plaintiff would ordinarily be expected to try them in one judicial

24 proceeding.'" *Trustees of Constr. Indus. and Laborers Health and Welfare Tr. v. Desert*

25

26

_____

27     [3]Plaintiffs have, however, sought to enjoin enforcement in their motion for
preliminary injunction. (ECF No. 61.) But that requested remedy is different from the focus
28 of the summary judgment motion, which seeks a declaration that the RMC provisions
were void *ab initio*.

1    *Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (citation

2    omitted).

3            This is the case here. Indeed, the Court does not find that reviewing Plaintiffs' BIS

4    claim as a state law claim rather than as a § 1983 claim deprives the Court of jurisdiction

5    because the case lacks a "common nucleus of operative fact." *See* 13D Charles A. Wright

6    & Arthur R. Miller, *Federal Practice & Procedure* § 3567.1 (3d ed. 2008) ("In practice, §

7    1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have

8    some loose factual connection."). Plaintiffs' state-law due process claim has at least a

9    loose factual connection to their claims indisputably alleging violations of the United

10   States Constitution. And although Plaintiffs rely on § 1983 and NRS Chapter 237 to make

11   different legal arguments, each claim in the Complaint arises from the same occurrence—

12   the City's approval of the amendments to the RMC on April 24, 2019. Moreover, it is

13   reasonable to expect that Plaintiffs—primarily dancers at AICs—would challenge the

14   City's decision to enact the amendments to the RMC further regulating AICs in one judicial

15   proceeding. The Court therefore finds that exercising supplemental jurisdiction over the

16   state-law BIS claim is appropriate. Having found the Court has jurisdiction over it, the

17   Court moves on to the merits of the parties' arguments regarding their claim for

18   noncompliance with NRS §§ 237.080 and 237.090.

19                    **2.      Compliance with NRS §§ 237.080 and 237.090**

20           Plaintiffs argue that the City violated NRS §§ 237.080 and 237.090 by: (1) failing

21   to provide an adequate BIS before adopting the amendments; and (2) failing to sufficiently

22   "consider" the BIS before adoption, including considering the BIS ten days before

23   adoption. (ECF No. 62 at 18, 20-21.) Such violations would render the amendments void

24   under NRS § 237.140. *See* NRS § 237.140 ("Any action of the governing body of a local

25   government to adopt a proposed rule in violation of the provisions of NRS § 237.030 to

26   237.150, inclusive, is void.") The City appears to counter that most of the amendments

27   the Plaintiffs object to are not "rules" that trigger the BIS requirement under NRS §

28   237.090. (*See, e.g.*, ECF No. 67 at 16-17.) The Court will first consider whether the

1   meaning of "rule" under NRS § 237.060 covers the amendments at issue before reaching

2   the issues of whether the BIS was adequate and whether the City Council sufficiently

3   "considered" the BIS.

4                    **a.      Meaning of "Rule" Under NRS § 237.060**

5              Under Nevada law, the obligation to prepare and consider a BIS applies only to

6   "rules" proposed by a local governing body. *See* NRS §§ 237.060, 237.080. NRS §

7   237.060(1) defines "rule" to mean:

8           (a) An ordinance by the adoption of which the governing body of a local
            government exercises legislative powers; and (b) An action taken by the
9           governing body of a local government that imposes, increases or changes
            the basis for the calculation of a fee that is paid in whole or in substantial
10          part by a business.

11  A statute's use of "and," when read as conjunctive, requires that all prongs be satisfied to

12  meet the definition. *See State Emp't Sec. v. Reliable Health Care*, 983 P.2d 414, 417

13  (1998).

14             The City explicitly noted in the BIS that the proposed amendments to RMC Title

15  18 are "not statutorily required to undergo the Business Impact Statement process" but

16  did not make the same assertion as to the proposed amendments to RMC Titles Four,

17  Five, and Eight. (ECF No. 67-15 at 6-7.) This omission implies that the City may have

18  acknowledged that the RMC Title Five amendments at issue here, which include

19  amendments that do not implicate fees, required a BIS. The City however presumes a

20  conjunctive reading of the statute by citing to *State Emp't Sec.* and asserting that the

21  minimum age requirement does "not constitute a 'rule' for purposes of NRS Chapter 237."

22  (ECF No. 67 at 16.) The City appears to contend that the only amendment triggering a

23  BIS was the amendment that required dancers to pay a $105.25 fee to the Reno Police

24  Department for the cost of an FBI background check, the economic impact of which the

25  City considered in the BIS. (*Id.* at 17.) Plaintiffs do not make any argument about the

26  definition of "rule" under NRS § 237.060 in their motion or reply. (ECF Nos. 62, 70.)

27  Plaintiffs instead appear to assume that the use of "and" in NRS § 237.060 is disjunctive

28

                                          10

1  and the amendments therefore need not satisfy NRS § 237.060(1)(b) to be considered

2  "rules" solely under NRS § 237.060(1)(a). (*Id.*)

3          The Court agrees with Plaintiffs' interpretation that the amendments are "rules"

4  under NRS § 237.060. First, while the meaning of "and" in statutes can be and has been

5  read as conjunctive under Nevada law, such an interpretation in this context makes little

6  sense. *See State Emp't Sec.*, 983 P.2d at 417. It is both confusing and unlikely to be the

7  intent of the Nevada Legislature to require that a "rule" be both "an ordinance by the

8  adoption of which the [local governing body] exercises legislative powers" and "an action

9  . . . that imposes, increases, or changes the basis for the calculation of a fee." *See* NRS

10  § 237.060(1). Read in its entirety, the specific exclusions from the definition of "rule" under

11  NRS § 237.060(2) treat "ordinances" adopted by a local governing body as separate from

12  "actions" taken by a local governing body, which supports a disjunctive interpretation.

13  *Compare* NRS § 237.060 (2)(a)-(b) *with* NRS § 237.060(c)-(d).

14          Second, the legislative history of NRS § 237.060 suggests that the Nevada

15  Legislature did not intend to limit the definition of "rule" to those that impose or modify

16  fees. The Nevada Legislature first added NRS § 237.060 in 1999 as Section 11 of Chapter

17  237 and originally defined "rule" as "an ordinance, regulation, resolution or other type of

18  instrument by the adoption of which the governing body of a local government exercises

19  legislative powers," except when authorized under NRS chapter 271, 278, 278A or 278B.

20  *See* Assemb. B. 486, 70th Leg., Reg. Sess. (Nev. 1999). The Nevada Legislature later

21  amended NRS § 237.060 in 2001 to its current iteration, which narrowed the definition of

22  "rule" into the definition found in NRS § 237.060(1)(a)-(b) and specified exclusions under

23  NRS § 237.060(2). *See* Assemb. B. 117, 71st Leg., Reg. Sess. (Nev. 2001).

24          The corresponding committee minutes indicate that the Nevada Legislature

25  amended the statute because "[t]he broad language from the 1999 legislation caused

26  problems in implementation." *See* Nev. S. Comm. on Gov't. Affs., 71st Leg., Reg. Sess.

27  (Nev. 2001) (committee minutes from April 23, 2001). Lobbyists appeared to be

28  concerned with carving out specific exclusions and in particular narrowing the language

to "avoid impacting budgets or voter-approved bond rates" that were not intended to be included, which is now reflected under NRS § 237.060(b) and (d). *See id.* The committee minutes do not indicate that the Nevada Legislature intended to narrow the language to the extent that only rules imposing or modifying fees paid by businesses would require BISs before adoption. *See id.* In fact, Assemblyman Goldwater stated that the bill amending NRS 237.060 "would satisfy local governments as well as private industry, erring on the side of protecting small business from unintended consequences of rules and regulations." *Id.* To adopt the City's conjunctive interpretation of "and" here would not be erring on the side of protecting small businesses.

Third, in the same legislative session that added NRS § 237.060, the Nevada Legislature amended the definition of "regulation" with an "and" that is disjunctive in nature. *See* Assemb. B. 12, 70th Leg., Reg. Sess. (Nev. 1999). The resulting statute defines "regulation" to mean:

> (a) An agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency; (b) A proposed regulation; (c) The amendment or repeal of a prior regulation; *and* (d) The general application by an agency of a written policy, interpretation, process or procedure to determine whether a person is in compliance with a federal or state statute or regulation in order to assess a fine, monetary penalty or monetary interest.

NRS § 233B.038 (emphasis added). Plain meaning suggests that a "proposed regulation" and an "amendment or repeal of prior regulation" are meant to be mutually exclusive. Therefore, the "and" must be disjunctive. NRS § 233B.038 thus provides further evidence that the statute in this case is properly interpreted as disjunctive.

Lastly, *Nevada Rest. Servs., Inc. v. Clark Cnty.*,[4] 981 F. Supp. 2d 947 (D. Nev. 2013), *aff'd*, 638 F. App'x 590 (9th Cir. 2016), the only case in which a court has

---

[4]As Plaintiffs note, with the addition of NRS § 237.140, the Nevada Legislature overturned *Nevada Rest. Servs.* as to the judicial standard of review laid out in the decision. (ECF No. 62 at 16-18.) NRS § 237.140 states that any violation of the provisions of NRS §§ 237.030 to 237.150 automatically voids the proposed rule. But this amendment does not undermine the *Nevada Rest. Servs.* court's analysis regarding the adequacy of a business impact statement.

addressed NRS § 237.090, impliedly suggests the use of the disjunctive definition of "rule." In *Nevada Rest. Servs.*, the court applied NRS § 237.080 and § 237.090 to ordinance amendments that added new requirements for taverns with restricted gaming licenses. *See id.* at 953-66. Those requirements—such as "a bar with eight embedded slot machines . . . , 2,500 square feet of open space, and a 'tavern restaurant' with 25 seats"—did not directly involve fees. *See id.* at 950. Still, the court assumed that a BIS was required and analyzed whether the BIS was adequate. *See id.* at 951-62. At no point in its analysis does the court discuss the definition of "rule," whether "and" is conjunctive or disjunctive, or any fees that might exist. *See generally id.* Nor do the plaintiffs or the defendants in their briefs ever assert any definition of "rule" themselves. *See generally Nevada Rest. Servs.*, Case No. 2:11-cv-00795-APG-PAL, ECF Nos. 38, 41, 49, 2012 WL 13129996, 2012 WL 13129995, 2013 WL 12380720 (D. Nev. Filed Nov. 8, 2012, Dec. 17, 2012, Jan. 17, 2013). The written record suggests that the issue was likely not raised, and both the district court and the parties simply assumed that NRS Chapter 237 applied whether or not the rule was connected to a fee. *See id.*

As a practical matter, the court therefore adopted the broader definition of "rule" and assumed that a BIS could be required either when the City Council exercises its legislative power to adopt an ordinance or when the City Council acts to modify a fee paid by a business. *See id.* at 951-62. And just as the court in *Nevada Rest. Servs.* did, this Court construes the statute as disjunctive because the alternative is contrary to common sense and the law's purpose. Because all the amendments objected to here are ordinances that exercise the City Council's legislative power, they are therefore "rules" under NRS § 237.060.

### b.    Adequacy of the Business Impact Statement

Because the amendments are "rules" under NRS § 237.060, before they can be adopted, the City Council must prepare a BIS under NRS § 237.080. Under NRS § 237.090, a BIS must include specific information, such as "[t]he estimated economic effect of the proposed rule on the businesses which it is to regulate," including "[b]oth adverse

1    and beneficial effects" and "[b]oth direct and indirect effects." *See* NRS § 237.090(1)(b).

2    Under NRS § 237.100, an aggrieved business can file an objection to the adoption of a

3    rule if the BIS is "inaccurate, incomplete or did not adequately consider or significantly

4    underestimated the economic effect of the rule on business." *See* NRS §§ 237.100(1)

5    and 237.100(2)(b). Read together, it follows that a BIS cannot be inaccurate, incomplete,

6    inadequate, or significantly underestimate the economic impact of the proposed rules.

7    *See* NRS §§ 237.080-237.100. NRS § 237.080 also requires that if the governing body

8    determines a proposed rule is "likely to impose a direct and significant economic burden

9    upon a business or directly restrict the formation, operation, or expansion of a business,"

10   it must "consider methods to reduce the impact of the proposed rule on businesses."

11   Plaintiffs argue that the City failed to meet the BIS criteria under NRS §§ 237.080

12   and 237.090 as to the BIS at issue here.[5] (ECF No. 62 at 21.) Plaintiffs specifically

13   contend that the BIS: (1) did not consider the loss of income to licensed dancers 18 to 21

14   years of age, which Plaintiffs point to as documented in a report by Pangborn & Co.

15   ("Pangborn Report"); and (2) did not suggest "less costly alternatives" for licensed

16   dancers 18 to 21 years of age. (ECF No. 62 at 22.) The City counters that Plaintiffs'

17   summary judgment motion is "devoid of any evidence showing that the Pangborn Report

18   contains any evidence" of the economic impact on 18-to-21-year-old dancers. (ECF No.

19   67 at 17 (emphasis omitted).) Because Plaintiffs focus their arguments on the adequacy

20   of the BIS as to the minimum age requirement and not to the other amendments, the

21   Court will therefore focus its analysis accordingly. (ECF No. 62 at 21-23.) The Court

22   agrees with Plaintiffs that the BIS is inadequate as to the minimum age amendment.

23   As Plaintiffs note, the BIS did not discuss the economic impact of the minimum

24   age requirement (RMC § 5.06.080(b)) on AIC dancers between the ages of 18 and 21.

25   (ECF No. 67-15.) Because these dancers hold individual business licenses and work as

26   independent contractors, they qualify as businesses that warrant consideration under

27

28       [5]Plaintiffs appear to have mistakenly referred to NRS § 237.070, instead of NRS § 237.080, in their motion for partial summary judgment. (ECF No. 62 at 21.)

NRS § 237.040. (*See, e.g.*, ECF No. 62-2 at 1; ECF No. 62-3 at 1.) But the BIS does not explicitly reference the minimum age requirement in its "economic impact" section, as the City itself acknowledges. (ECF No. 67-15 at 6-7; ECF No. 67 at 6.) The BIS appears to impliedly address the minimum age requirement in all-encompassing fashion by stating that "the proposed amendments to RMC Titles 4, 5, and 8 appear to have unknown direct and indirect impacts, as they are difficult to quantify." (ECF No. 67-15 at 6.) This is neither sufficient nor accurate as to the dancers between the ages of 18 and 21.

In *Nevada Rest. Servs.*, the court kept in mind "the ultimate goals of the BIS statute: to enable meaningful participation by affected business and informed governmental decision-making" in determining the adequacy of BISs and found that an "approximation, even if sparse in dollar amounts" was sufficient to meet those goals. *See* 981 F. Supp. 2d at 958. Here, while the City need not have provided the level of detail seen in the Pangborn Report, it did not provide even an "approximation" of the economic impact of the minimum age requirement. (ECF No. 67-15 at 6-7.) The BIS therefore did not address the adverse economic effect "at a sufficient level of specificity." *See Nevada Rest. Servs.*, 981 F. Supp. 2d at 960.

The minimum age requirement effectively prevented those AIC performers between the ages of 18 and 21 from engaging in their independent contract work at all within the city limits. (*See, e.g.*, ECF No. 62-2 at 3; ECF No. 62-3 at 1.) This total bar is not only a direct impact but a measurable loss of income. (*See, e.g.*, ECF No. 62-2 at 3; ECF No. 62-3 at 1.) Because the impact on the independent contractor dancers was ascertainable and reasonably known to the City Council, it is fair to characterize this lack of analysis as the kind of "significant underestimation" that violates NRS § 237.100. *See* NRS § 237.100. Because any violation of NRS § 237.080 or NRS § 237.090 voids a proposed rule under NRS § 237.140, the Court finds that the minimum age amendment is void. *See* NRS § 237.140.

The Court further agrees with Plaintiffs that the City's failure to consider "less costly alternatives" renders the minimum age requirement void as well. The City appears to have

1  not considered methods to reduce the impact of the minimum age requirement because

2  it did not determine that it was "likely to impose a direct and significant economic burden

3  upon a business or directly restrict the formation, operation, or expansion of a business"

4  under NRS § 237.080. (ECF No. 67-15 at 7.) However, the minimum age requirement

5  certainly imposes such a burden and directly restricts the operation of businesses by

6  barring those between the ages of 18 and 21 from engaging in independent contract work

7  as AIC dancers. (*See, e.g.*, ECF No. 62-2 at 3; ECF No. 62-3 at 1.) The City therefore

8  should have considered methods to reduce the impact of the proposed rule under NRS §

9  237.080(3). But it did not.

10        The City presents other threshold arguments that the Court finds unpersuasive and

11  now addresses. First, the City's argument that the proper vehicle for judicial review here

12  is a writ of mandamus is unpersuasive. (ECF No. 67 at 14-15.) The City cites to *Kay v.*

13  *Nunez*, 146 P.3d 801, 804 (2006), which held that "the proper mechanism for seeking

14  review of local zoning and planning decisions in the district court . . . is through a petition

15  for judicial review," not a petition for a writ of mandamus. Thus, *Kay* does not support the

16  City's argument. The City also cites to a footnote in *Nevada Rest. Servs.* that similarly

17  does not support their argument, as it merely notes that the complaint in that case sought

18  both mandamus and judicial review. *See* 981 F. Supp. 2d at 951 n.2.

19        The City also argues that Plaintiffs did not exhaust their administrative remedies

20  before seeking relief in this Court. (ECF No. 67 at 15.) The City points to NRS § 237.100,

21  which states that an aggrieved business *may* object to a BIS by timely filing a petition with

22  the governing body. But NRS § 237.100, by its plain language, is not an exhaustion

23  requirement. Moreover, it does not matter whether Plaintiffs were part of the unnamed

24  "class of 18 to 21-year-old females" on whose behalf Plaintiffs' counsel filed the May 8,

25  2019, objection. (ECF No. 67 at 15.) Plaintiffs themselves need not have formally objected

26  to the adopted amendments to now argue that the City adopted those amendments in

27  violation of Nevada law. And as noted above, the Court finds that the City violated Nevada

28  law because the pertinent BIS was inadequate as to the minimum age requirement.

**c.      Consideration of the Business Impact Statement**

Plaintiffs also allege two procedural defects in the City Council's adoption of the amendments in question. (ECF No. 62 at 18-21.) First, that the City Council did not consider the BIS at least ten days before adoption, as required by NRS § 237.090. (*Id.* at 18-20.) Second, that the City Council never "considered" the BIS at all but merely "acknowledged receipt" in violation of NRS § 237.090. (*Id.* at 20-21.) The City argues that it did in fact consider the BIS more than ten days before adopting the amendments and that it did not need to consider the economic impact of the rule on dancers under 21 years old. (ECF No. 67 at 15-17.) The Court agrees with the City that the BIS was considered at least ten days before adoption. And while the Court disagrees with the City's contention that it did not need to consider the economic impact of the minimum age requirement, it nevertheless finds that the City sufficiently considered the BIS under NRS § 237.090.

Under NRS § 237.090, a governing body must consider the BIS "at least 10 calendar days before the public meeting of the governing body held to adopt the proposed rule." There were two votes on the proposed amendments: one on April 24, 2019, and one two weeks later, on May 8, 2019. (ECF No. 67-18 at 8-14; ECF No. 67-23 at 27-30.) Plaintiffs construe the April 24 vote as the initial adoption of the amendments and thus argue that the BIS was not considered ten days before adoption. (ECF No. 62 at 18.) That is not a fair representation of the April 24 vote, which is better characterized as a vote to later vote on the proposed amendments. (ECF No. 67-18 at 8-14.) It is basically a function of the city charter, which (independently of NRS § 237.090) requires a ten-day period between proposing amendments and adopting them. *See* Reno City Charter § 2.100, https://www.leg.state.nv.us/CityCharters/CtyRCC.html. But the amendments did not become law until the vote on May 8, 2019. (ECF No. 67-23 at 27-30.) Plaintiffs' argument is factually incorrect. There was therefore no violation of the ten-day rule that would void the amendments.

Next, Plaintiffs argue that the City Council did not truly "consider" the BIS, as required by NRS § 237.090, but merely "acknowledged receipt." (ECF No. 62 at 20-21.)

17

1    Their reasoning is two-fold: 1) that the City Council could not fully consider a BIS that was

2    incomplete; and 2) the City Council voted to "acknowledge" the BIS rather than "accept"

3    it. (*Id.*) The Court finds neither argument persuasive and instead agrees with the City that

4    the City Council adequately considered the BIS.

5          The first argument is essentially a repeat of the "inadequate BIS" argument, which

6    the Court has already addressed and finds unpersuasive as a challenge to the BIS

7    "consideration" requirement. (*Compare id.* at 21-22 *with id.* at 20.) As to Plaintiffs' second

8    argument, there is no articulated standard of what is required to sufficiently "consider" a

9    BIS under NRS § 237.090. The statute itself provides no insight. *See* NRS § 237.030-

10   237.150. It was not at issue in *Nevada Rest. Servs. See* 981 F. Supp. 2d 947. Here, the

11   BIS was included in an information packet given to City Councilmembers at the April 24

12   meeting. (ECF No. 62-1 at 67.) There was also a presentation given on issues concerning

13   the proposed amendments. (*Id.* at 32.) Most significantly, there was much discussion

14   about whether the BIS was thorough enough to satisfy the requirements of NRS §

15   237.090. (*Id.* at 62-73.) The City Council and City staff discussed what was included, what

16   was not included, and what was required to be included. (*Id.*) At least one councilmember

17   was not satisfied because he believed the BIS did not sufficiently consider potential costs

18   to businesses. (*Id.* at 63-64.) This evolved into a discussion about whether the City

19   Council needed to "accept" the BIS. (*Id.* at 77-79.) In order to move on from the issue, the

20   City Council motioned to "acknowledge" the BIS instead. (*Id.*)

21         Plaintiffs latch onto the City's decision to "acknowledge" the BIS as proof that the

22   BIS was not actually considered, in violation of NRS § 237.090. However, to argue that

23   the City Council "merely acknowledged receipt" and did not consider the BIS is not a

24   faithful description of what transpired. The BIS—what it included and what it did not

25   include—was discussed at length. (*Id.* at 62-73.) Simply because the City Council did not

26   vote to "accept" its findings—language that is not found anywhere in NRS Chapter 237—

27   does not necessarily mean the City Council did not consider the BIS. Whether the City

28   Council considered the BIS is a matter of plain language and common sense. Merriam-

1    Webster defines "consider" as "to think carefully; such as (a) to think of especially with

2    regard to taking some action; (b) to take into account." Merriam-Webster, *Consider*

3    *Definition & Meaning* (Sept. 14, 2022, 2:45 PM); https://www.merriam-

4    webster.com/dictionary/consider. The City Council did that. The Court therefore finds that

5    the City Council's discussion of the BIS and the inclusion of the BIS in packets given to

6    councilmembers was sufficient consideration. Thus, there is no violation of the

7    consideration requirement under NRS § 237.090.

8          Because the Court finds that the City sufficiently considered the BIS, the Court's

9    separate conclusions as to the minimum age amendment and the other amendments

10   remain the same as previously discussed. And all of this brings the Court to Plaintiffs'

11   motion for preliminary injunction.

12         **B.    Preliminary Injunction: Equal Protection Claims**

13         The Court first considers the City's challenge to the admissibility of certain exhibits

14   to this motion before reaching the merits of Plaintiffs' motion for preliminary injunction

15   based on two equal protection claims, the first regarding age discrimination and the

16   second regarding gender discrimination.

17         **1.    Admissibility of ECF No. 61-1, Exhibits A, F-H**

18         The City argues that Plaintiffs never disclosed four of their exhibits filed in support

19   of their motion for preliminary injunction during discovery and thus these exhibits should

20   be excluded and not considered by the Court in reviewing Plaintiffs' request for injunctive

21   relief. (ECF No. 63 at 6-7.) The City correctly contends that the names of four individuals

22   who provided declarations in support of Plaintiffs' motion were not disclosed during

23   discovery and identify those corresponding exhibits as the Declaration of Joanie Kersey

24   (ECF No. 61-1 at 4-7 (Exhibit A)), the Declaration of Leilani Taylor (*id.* at 31-33 (Exhibit

25   F)), the Declaration of Dancer "JT" (*id.* at 34-38 (Exhibit G)), and the Declaration of Joseph

26   Beauchamp (*id.* at 42-44) (Exhibit H)).[6] (ECF No. 63 at 6; ECF No. 63-1.) Plaintiffs do not

27   _____

28         [6]The City identified Exhibits A, G-I, but the declarations they specified are in fact
     Exhibits A, F-H. (ECF No. 61-1 at 4-7, 31-38, 42-44.) The Declaration of Mark R.

1    respond to this argument in their reply. (ECF No. 66.) As further explained below, because

2    Plaintiffs have not met their burden to show the failure to disclose was substantially

3    justified or harmless, the Court agrees with the City that exclusion of these four exhibits

4    is proper.

5          Under Rule 26, a party must disclose witnesses likely to have discoverable

6    information and copies of the documents it intends to rely on to support its claims or

7    defenses. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii). If a party learns its disclosures are

8    incomplete or incorrect, it must timely supplement or correct those disclosures. *See* Fed.

9    R. Civ. P. 26(e)(1)(A). "Rule 37(c)(1) gives teeth to these requirements[.]" *Yeti by Molly,*

10   *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Under Rule 37(c)(1),

11   when a party fails to disclose or supplement its disclosures, the default rule is the party

12   cannot use that information or witness to supply evidence on a motion, at a hearing, or at

13   trial. *See id.* (describing the sanction as "self-executing"). Exclusion of undisclosed

14   evidence is appropriate unless the failure to disclose was "substantially justified or

15   harmless." *See id.* The burden is on the party facing sanctions to prove substantial

16   justification or harmlessness. *See id.* at 1107. The Court retains discretion to fashion

17   appropriate relief in the event of a failure to disclose. *See id.* at 1106 (stating that a district

18   court has "particularly wide latitude" over its discretion to issue sanctions under Rule

19   37(c)(1)).

20         As the City notes, discovery in this case closed on April 2, 2021. (ECF No. 63 at

21   6; ECF No. 42.) The Declaration of Joanie Kersey contains the results of a survey she

22   conducted of certain businesses after the discovery deadline, between April 2, 2021, and

23   April 27, 2021. (ECF No. 61-1 at 5, 7.) The inclusion of Kersey's declaration is prejudicial

24   to the City because, as far as the Court can tell, it was created after the close of discovery.

25   (*Id.*) Moreover, Plaintiffs do not even address the City's arguments to exclude the

26   Declaration of Joanie Kersey and have not shown substantial justification or

27

28   Thierman appears to mislabel the exhibit letters. (ECF No. 61-1 at 2-3.) Regardless, the
     Court construes that the City is arguing that Exhibits A, F-H should be excluded.

1    harmlessness. (ECF No. 66.) The Court will therefore exclude the Declaration of Joanie

2    Kersey.[7]

3            The remaining declarations are by AIC performers and were originally submitted

4    in *Discopolus LLC v. City of Reno*, Case No. 3:17-cv-00574-MMD-VPC (D. Nev. Filed

5    Sept. 18, 2017). (ECF No. 61-1 at 31-38, 42-44.) Because Plaintiffs have also failed to

6    respond to the City's arguments to exclude these declarations, Plaintiffs have not

7    demonstrated that an exception to Rule 37(c) applies. (ECF No. 66.) The Court will

8    therefore also exclude the Declarations of Leilani Taylor, Dancer "JT," and Joseph

9    Beauchamp.

10           Accordingly, the Court will not consider these four exhibits in deciding Plaintiffs'

11   motion for preliminary injunction.

12                  **2.      Equal Protection Age Discrimination Claim**

13           Plaintiffs' equal protection age discrimination claim is based on the minimum age

14   requirement of RMC § 5.06.080(b). (ECF No. 61 at 21-26.) Because the Court grants

15   Plaintiffs' motion for partial summary judgment as to the minimum age requirement and

16   thereby grants Plaintiffs' request for declaratory judgment that the minimum age

17   requirement is void, the Court finds moot the relief requested in Plaintiffs' motion for

18   preliminary injunction as to their equal protection age discrimination claim.

19                  **3.      Equal Protection Gender Discrimination Claim**

20           Plaintiffs argue that RMC § 5.06.011 facially discriminates against female AIC

21   performers and thereby renders RMC Chapter 5.06 unconstitutional. (*Id.* at 18-21.) The

22   City counters that Plaintiffs' equal protection gender discrimination claim is not ripe

23   because Plaintiffs fail to allege an actual concrete controversy and present an "illusory,

24   speculative claim." (ECF No. 63 at 9.) The Court finds the City's argument unpersuasive

25   as a ripeness argument because Plaintiffs' claim does concern a live controversy—the

26   constitutionality of RMC § 5.06.011. However, the Court has a *sua sponte* obligation to

27

28           [7]Excluding the Declaration of Joanie Kersey has little effect on Plaintiffs' case
     because Plaintiffs' citation to the Declaration does not support Plaintiffs' corresponding
     statement in their brief in any event. (ECF No. 61 at 5.)

analyze standing, finds that the City's argument is better construed as a lack-of-standing argument, and so construes it. The Court accordingly first determines whether Plaintiffs have standing before reaching the merits of their motion for preliminary injunction as to their equal protection gender discrimination claim. To preview, the Court finds Plaintiffs lack standing to prosecute this claim.

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs must demonstrate standing separately for each claim they press, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), each form of relief they seek, *see Friends of the Earth, Inc.*, 528 U.S. at 185, and each provision they challenge, *see 4805 Convoy, Inc. v. San Diego*, 183 F.3d 1108, 1112-13 (9th Cir. 1999). Plaintiffs bear this burden. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.") (internal citations, quotation marks, and punctuation omitted).

A plaintiff establishes an injury in fact only where she has shown that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (citing *Lujan*, 504 U.S. at 560). An injury is particularized where it "affect[s] the plaintiff in a personal and individual way." *Id.* (citation omitted). In addition to alleging a particularized injury, plaintiffs must assert injury that is "concrete." *Id.* Generally, where a plaintiff seeks prospective relief such as a declaration and injunction, as here,

1   concreteness is strictly construed. For example, in *Spokeo,* the Supreme Court explained

2   that "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal

3   quotations and citation omitted).

4          The City argues that Plaintiffs fail to allege an actual concrete controversy because

5   they intentionally misconstrue the plain language of RMC § 5.06.011 to reach their

6   "illusory allegation" of gender discrimination. (ECF No. 63 at 9.) The Court agrees in

7   pertinent part. RMC § 5.06.011(1) defines "adult interactive cabaret performer" as "any

8   person male or female who . . . performs as a sexually-oriented dancer . . . whose

9   performance on a regular and substantial basis emphasizes exposure of and focus on

10   the adult interactive cabaret performer's specified anatomical areas." Plaintiffs focus, as

11   the basis for their equal protection challenge, on how RMC § 5.06.011 defines "specified

12   anatomical areas" and argues that the statute "limits the definition of an adult interactive

13   cabaret performer to any erotic dancers who exposes the 'female breast below a point

14   immediately above the top of the areola.'" (ECF No. 61 at 19.)

15          As the City points out, however, RMC § 5.06.011 does not limit the definition of

16   AIC performer in this way given that the statute defines "specified anatomical areas" to

17   mean "(1) Less than completely or opaquely covered: human genitals or pubic region;

18   buttock; or female breast below a point immediately above the top of the areola; and (2)

19   Human male genitals in a discernibly turgid state, even if completely or opaquely

20   covered."

21          RMC § 5.06.011 certainly regulates Plaintiffs who meet the definition of "adult

22   interactive cabaret performer[s]," but it does not regulate the dancers solely because they

23   are women. The statute by its plain language regulates both male and female AIC

24   performers. *See* RMC § 5.06.011. And by defining "specified anatomical areas" to include

25   all "human genitals," the statute applies to AIC performers of all genders. *See id.* As the

26   City notes, moreover, whether a person bares their full breast does not in itself determine

27   whether a person falls under the definition of an AIC performer and is regulated under

28   RMC Chapter 5.06. (ECF No. 63 at 12.) RMC § 5.06.011 more broadly points to zones of

1    the body that society has historically deemed private and therefore sexualized. Both

2    female and male "sexually-oriented dancers" as defined by the statute are subject to the

3    same fees, background checks, and restrictions that Plaintiffs challenge. (ECF No. 61 at

4    21.) Plaintiffs therefore have not demonstrated a concrete and particularized injury as to

5    their equal protection gender discrimination claim.

6         The Court's conclusion regarding injury also leads the Court to conclude Plaintiffs

7    fail to show traceability and redressability because there is no injury in fact to be traced

8    to the City's conduct nor one that may be redressed by the relief sought. In any case,

9    Plaintiffs are required to satisfy all three requirements of standing. *See Friends of the*

10   *Earth*, 528 U.S. 180-81. Because Plaintiffs have not met the first standing requirement,

11   the Court need not—and does not—analyze the remaining two.

12        Given that Plaintiffs have not demonstrated standing as to their equal protection

13   gender discrimination claim, the Court denies Plaintiffs' motion for preliminary injunction

14   as to this claim and, indeed, dismisses it without prejudice.[8]

15   **V.    ORDER TO SHOW CAUSE**

16        While not dispositive to the pending motions because they focus primarily on the

17   minimum age requirement and Plaintiffs' gender discrimination claim, considering

18   Plaintiffs' standing as to the claims they focus on in their motions has caused the Court

19   to develop other concerns regarding Plaintiffs' standing. The Court will thus order

20   Plaintiffs to show cause as to their standing responsive to the Court's concerns outlined

21   below.

22        First, Plaintiffs largely focus their arguments on the minimum age amendment and

23   not the other amendments related to private rooms, brighter lighting, and video monitoring

24   in their BIS claim. (ECF No. 62.) While it is clear to the Court that they have standing to

25   challenge the minimum age amendment, it is not so clear how the other amendments

26

27        [8]But to be clear, the Court finds that Plaintiffs have standing as to their claim
     regarding the minimum age amendment discussed above. As explained above, Plaintiffs
28   have clearly alleged a relatively easy-to-compute economic injury as to the minimum age
     requirement.

1   cause injury to Plaintiffs. In the Complaint, Plaintiffs nakedly assert that "[a]ll Plaintiffs

2   have standing to assert due processes [sic] claims against the City of Reno for enacting

3   rules and ordinances directly affecting them without adhering to the requirements of NRS

4   237.030 through 237.100, inclusive." (ECF No. 1 at 5.) But beyond general and

5   speculative loss-of-revenue arguments, Plaintiffs devote no further argument to establish

6   standing specifically as to these other amendments. (ECF No. 62.) The Court therefore

7   directs Plaintiffs to show cause as to their standing to challenge these other amendments.

8       Separately, Plaintiff Brooks is not an AIC performer but a patron. (ECF No. 1 at 2.)

9   The standing analysis for Brooks is necessarily different from that of the other Plaintiffs.

10  For instance, Brooks has not faced a loss of income as the other Plaintiffs have. Plaintiffs'

11  assertions that the minimum age requirement, which has always applied to patrons,

12  prevents Brooks from exercising her "First Amendment and Equal Protection right" to

13  observe AIC dancers does not give the Court enough information to determine whether

14  she has standing. (ECF No. 1 at 4.) The Court thus also orders Plaintiffs to show cause

15  as to why Brooks has standing in this action.

16  **VI.    CONCLUSION**

17      The Court notes that the parties made several arguments and cited to several

18  cases not discussed above. The Court has reviewed these arguments and cases and

19  determines that they do not warrant discussion as they do not affect the outcome of the

20  motions before the Court.

21      It is therefore ordered that Plaintiffs' motion for partial summary judgment (ECF

22  No. 62) is granted in part and denied in part. It is granted as to Plaintiffs' claim related to

23  the minimum age amendment (RMC § 5.06.080(b)) as specified herein. It is otherwise

24  denied.

25      It is further ordered that Plaintiffs' motion for preliminary injunction (ECF No. 61) is

26  denied as specified herein.

27      It is further ordered that Plaintiffs' equal protection gender discrimination claim

28  (ECF No. 1 at 9-11) is dismissed without prejudice for lack of standing as specified herein.

It is further ordered that within 30 days from the date of entry of this Order, Plaintiffs must show cause in writing why Plaintiffs have standing to challenge amendments other than the minimum age requirement and why Plaintiff Brooks has standing.

It is further ordered that the City must file a response to Plaintiffs' filing regarding standing within another 14 days. The Court will not permit a reply.

DATED THIS 19th Day of September 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

26